[No. 2162]

# J. H. DALY, APPELLANT, *v.* LAHONTAN MINES COMPANY (A CORPORATION), ET AL., RESPONDENTS.

[151 Pac. 514; 158 Pac. 285]

1. APPEAL AND ERROR—APPEAL ON JUDGMENT ROLL—STATUTE.
   By direct provision of Rev. Laws, sec. 5338, a party may appeal on the judgment roll alone.

2. JUDGMENT—COLLATERAL ATTACK—JURISDICTION.
   A collateral attack upon a judgment is only permissible when the judgment is void for want of jurisdiction, and not if the court merely errs in some ruling.

3. CORPORATIONS — FOREIGN CORPORATIONS — SERVICE OF PROCESS — STATUTES—"AGENT OR OTHER HEAD"—"AGENT."
   Comp. Laws, 3124, provides that service of process against a foreign corporation doing business within the state may be made on an agent, cashier, secretary, president, or other head thereof. Section 899 provides that every foreign corporation doing business in the state shall appoint an agent upon whom all legal process may also be served. In an action to enforce a mechanic's lien against a foreign corporation, service was made on its manager, who had not been appointed its agent therefor. *Held,* that such service was valid under section 3124, which was in force at the passage of section 899, since the manager of a corporation is such an agent or "other head" of a company as is contemplated by the statute; an "agent" being one who has authority to act for another.

4. QUIETING TITLE—BASIS OF ACTION—TITLE.
   Plaintiff, not claiming any title to realty, but seeking a decree directing that a sheriff convey to him real property sold under a judgment, the plaintiff being the purchaser's successor, cannot maintain an action to quiet title, which is based on the presumption that plaintiff has title.

5. MECHANICS' LIENS—RIGHT OF REDEMPTION FROM JUDGMENT.
   Two judgments were entered against a corporation in separate mechanic's lien actions, and the property sold under each judgment. The successor of the purchaser under the second judgment lost his right to the property as a redemptioner, when he failed to redeem from the first judgment within the statutory time, and before the issuance of the sheriff's deed to the purchaser thereunder.

6. MECHANICS' LIENS—PRIORITY—WAIVER.
   Revised Laws, sec. 2223, provides that, wherever liens are asserted against any property, the court in the judgment must declare their rank, placing liens for labor first. Section 2227 provides that, at the time of filing the complaint and issuing the summons in a lien action, the plaintiff shall notify all persons claiming liens on the premises to exhibit proof of their liens to the court. A mechanic's lienor for labor failed to exhibit his lien in a prior lien suit. *Held* that, so far as the

plaintiffs in such suit and those who did exhibit their liens were concerned, he had waived his right under the statute to priority as a labor lienor.

## ON REHEARING

1. EQUITY—MAXIMS—APPLICATION.

Though equity considers that done which should have been done, it does not follow that an equitable right once existing will always exist; but, to avail oneself of such right, it must be asserted in apt time and diligently prosecuted.

2. MECHANICS' LIENS—CONSTRUCTION OF STATUTE.

While the mechanics' lien law should be liberally construed, it is a creature of statute; and, to enable one to acquire and enforce a right under it, there must be a substantial compliance with the statute.

3. CONTINUANCE—ENFORCEMENT OF MECHANICS' LIEN.

Under Rev. Laws, sec. 2227, providing that, at the time of filing the complaint and issuing the summons in a lien action, the plaintiff shall notify all persons claiming liens to exhibit proof, and that all liens not exhibited shall be deemed to be waived in favor of those exhibited, where lien claimants sued to enforce their lien, and gave proper notice to other claimants to exhibit their liens, and other claimants, who had an opportunity to exhibit their liens and had elected to institute an independent suit, appeared by attorney and stated that the other suit was pending for the foreclosure of their liens, and that at the proper time they would appear and join in the foreclosure, the court very properly refused the claimants' continuance.

4. JUDGMENT—COLLATERAL ATTACK—ERROR IN JURISDICTION.

Where the court had jurisdiction both over the subject-matter and the defendant in a mechanic's lien suit, its failure to enter an order consolidating with the suit a subsequent suit against the same defendant was merely an error in the exercise of jurisdiction, if it was the duty of the court so to consolidate, which could be asserted on appeal only, and not in an independent action.

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

Where the case is before the supreme court on appeal from an order sustaining demurrer to the complaint, the court cannot look back of the complaint to ascertain the facts.

6. MECHANICS' LIENS—ENFORCEMENT—CONSOLIDATION OF SUITS—STATUTE.

Under Rev. Laws, sec. 2224, relating to consolidation of lien claims, a lien suit instituted by a labor lien claimant, in which others joined, should have been consolidated with other and prior suits against the same defendant.

7. MECHANICS' LIENS—PRIORITY—STATUTE.

By Rev. Laws, sec. 2223, labor liens are preferred claims, and entitled to be paid out of the proceeds of the sale of the property in advance of other classes of lien claimants.

8. MECHANICS' LIENS—PROTECTION OF CLAIMANTS.

Trial courts, in actions to foreclose liens, where it appears there are other lien claimants and particularly that other suits are pending for the foreclosure of such other liens, should endeavor to protect the rights of all claimants in one judgment.

9. MECHANICS' LIENS—PROTECTION OF CLAIMANTS.

The procedure under the mechanics' lien statute should be liberal to the end of protecting the rights of all lien claimants.

10. MECHANICS' LIENS—FORECLOSURE—CONSOLIDATION OF ACTIONS—CONTINUANCE.

In suit to foreclose liens, the court of its own motion, could have consolidated all lien actions pending, heard the proofs in the first action, and granted reasonable continuance for hearing of proofs in the others.

11. MECHANICS' LIENS—WAIVER—STATUTE.

Under Rev. Laws, sec. 2227, providing that, at the time of filing the complaint and issuing the summons in a lien action, the plaintiff shall notify all persons claiming liens to exhibit proof, and that all liens not exhibited shall be deemed to be waived in favor of those exhibited, in an original lien suit, where no proofs were offered of liens involved in another and subsequent lien suit, no request made for consolidation of suits, and no appeal taken from the order refusing a continuance to the other lien claimants for the presentation of proofs, there was a waiver in favor of the liens involved in the original suit.

APPEAL from the First Judicial District Court, Lyon County; *Frank P. Langan*, Judge.

Action by J. H. Daly against the Lahontan Mines Company and others. Judgment for defendants, and plaintiff appeals. **Affirmed.**

*J. H. Daly* and *John Lothrop*, for Appellant:

The complaint is in the nature of a bill in equity, the sufficiency of which is attacked by general demurrer. If any matter set forth is proper for equitable relief, the demurrer should have been overruled. (16 Cyc. 272.) Equity will always entertain jurisdiction of actions to quiet title, because of the fuller remedy afforded. (32 Cyc. 1305.)

Under our statutes, the setting forth of a mere general claim to real property against which the defendants claim

adversely would state a cause of action which ought to be determined by a hearing of the facts. (Rev. Laws, 5514.)

Appellant has a right in the property as a redemptioner, and is entitled to have this right legally determined. (*Whitney* v. *Higgins*, 10 Cal. 547; 27 Cyc. 347–350, 362; 36 L. R. A. n. s. 427.)

Appellant has a superior right to the property involved, the statutory distinction having been fixed as between liens for labor and material. (Rev. Laws, 2223.)

Section 2227, Revised Laws, requiring that all existing liens against property involved in a lien action be exhibited to the court at the time of the commencement of the action, is unconstitutional. (*Lonkey* v. *Keyes*, 21 Nev. 312; *Scorpion M. Co.* v. *Marsano*, 10 Nev. 370; *Coscia* v. *Kyle*, 15 Nev. 395.)

*Mack & Green*, for Respondents:

Section 2227, Revised Laws, is distinct, clear, and emphatic, and measures precisely the rights of the appellant's assignors. (*Hunter* v. *Truckee Lodge*, 14 Nev. 24; Bloom on Mechanics' Liens, sec. 627; *Skyrme* v. *Occidental M. & M. Co.*, 8 Nev. 231; *Mars* v. *McKay*, 14 Cal. 128.)

All the facts from which the legal conclusion must be drawn appear in the complaint. The demurrer to the sufficiency of the complaint was properly sustained.

By the Court, COLEMAN, J.:

This is an appeal from a judgment for costs in favor of defendants, respondents herein, following an order sustaining a general demurrer to appellant's complaint.

The complaint alleges that during the year 1910 the Ramsey Comstock Mining Company, a foreign corporation, was engaged in mining in Lyon County, and became indebted to numerous persons. That on November 11, 1910, one John Topogna commenced an action in the district court of Lyon County to foreclose a mechanic's

lien; that on the same day a similar suit was commenced by one M. G. Gardella, and that the two actions were consolidated; that on the 12th day of that month a summons was issued in said consolidated action and placed in the hands of the sheriff for service; that his return was as follows:

"I hereby certify that I received the within summons on the 12th day of November, A. D. 1910, at 4 o'clock p. m., and duly served the same by personally delivering a true copy thereof attached to a certified copy of the complaint to A. H. Mayne, manager of said Ramsey Comstock Mining Company, in Lyon County, on the 4th day of November, 1910, by delivering to him a true copy thereof, and by showing him this original."

It also appears from the complaint that notice was published, according to law, notifying all persons having liens upon the property against which said Topogna and Gardella liens were sought to be foreclosed to exhibit proof of same before the district court on December 17, 1910. The section of the statute requiring the notice is Rev. Laws, 2227, and reads:

"* * * And at the time of filing the complaint and issuing the summons the plaintiff shall cause a notice to be published at least once a week, for three successive weeks, in one newspaper published in the county, and if there is no newspaper published in the county, then in such mode as the court may determine, notifying all persons holding or claiming liens under the provisions of this act on said premises, to be and appear before said court on a day specified therein, and during a regular term of such court and to exhibit then and there the proof of their said liens. * * * "

It also appears from the complaint that, notwithstanding the Topogna-Gardella suit, and the notice given in that case to lien claimants, on December 1, 1910, one William Ross commenced a suit in the same court against the Ramsey Comstock Mining Company to foreclose certain labor liens, in which case service of summons was made upon the defendant company the same day, and that

notice was published according to law (quoted *supra*), notifying all lien claimants to exhibit their claims in said suit on or before January 5, 1911, pursuant to which notice several claimants exhibited their claims. On January 20, 1914, the defendant having failed to appear in the consolidated suit of Topogna and Gardella, its default was entered, and on that day the court entered judgment in favor of the plaintiffs, and against the defendant, Ramsey Comstock Mining Company. In the suit of Ross against the Ramsey Comstock Mining Company the default of the company was entered March 8, 1911, and on the same day judgment was entered by the court in favor of Ross and against the company.

It is further alleged that during the month of February, 1911, the sheriff of Lyon County sold the property in question under an order of sale in the case of *Topogna et al.* v. *Ramsey Comstock Mining Company*, and that the plaintiffs in the case were the purchasers, and that the certificate of sale was assigned to the defendants, C. E. Mack and George Green, to whom it is alleged a sheriff's deed issued conveying the property, and that the defendant, the Lahontan Mines Company, claimed to own the property in question, pursuant to a conveyance from Mack and Green. It is also alleged that by virtue of an order of sale made by the court in the case of *Ross* v. *Ramsey Comstock Mining Company*, the sheriff of Lyon County, on the 18th day of April, 1911, sold the property to William Ross, after having given due and legal notice of the sale, and on said last-named day issued to him a certificate of sale for said property; that on the 21st day of September, 1911, said C. E. Mack and George Green instituted an action in the district court of Lyon County against D. P. Randall, as sheriff of said county, to restrain him from issuing a sheriff's deed to said William Ross to said property, pursuant to the certificate of sale last mentioned; and that thereafter judgment and decree was entered in favor of said Mack and Green, and against said Randall, as such sheriff, permanently enjoining him from issuing such deed. It is further alleged that appellant

was, at the time of the commencement of this action, the owner of the certificate of sale which was issued to said Ross, and of all rights thereunder.    No appeal was taken in any of the cases mentioned herein.

**1.** Respondents, in apt time, made a motion to dismiss this appeal on two grounds: (1) Because no statement on appeal was served, as provided by section 5331, Revised Laws, and (2) because the transcript of the record was not filed in this court within the time allowed.    Section 5338, Revised Laws, provides:

"* * * A party may appeal upon the judgment roll alone, in which case only errors can be considered which appear upon the face of such judgment roll."

Section 5273, Revised Laws, provides that the judgment roll shall consist of:

"1. * * * 2. * * * The pleadings, * * * and a copy of any order made on demurrer, * * * and a copy of the judgment. * * * "

A judgment roll, properly certified to, has been filed in this court, together with a copy of the notice of appeal from the judgment.    On the oral argument it was stated that appellant sought to appeal upon the judgment roll only, and since there is no contention that the purported judgment roll is defective, and since the statute expressly says that an appeal may be taken thereupon, it follows that the motion to dismiss the appeal must be denied.

Several grounds are urged why the judgment appealed from should be reversed, the ones most strongly urged being: (1) Because there was no court in session on the 17th day of December, 1910, the day fixed in the notice in the case of *Topogna and Gardella* v. *Ramsey Comstock Mining Company* for other lien claimants to exhibit the proof of their liens; (2) because, when the court convened on January 20, 1911, it refused to grant further time to William Ross in which to exhibit his lien; and (3) because the judgment in the case of *Topogna and Gardella* v. *Ramsey Comstock Mining Company* is void for the want of jurisdiction, for the reason that there was no proper service upon defendant, Ramsey Comstock Mining

Company, and that it did not appear and submit itself to the jurisdiction of the court.

**2.** If we have correctly stated the points upon which appellant seeks to reverse the case, it will be seen that this suit is a collateral attack upon the judgment in the Topogna-Gardella case. We think it is an elementary rule that a collateral attack upon a judgment can be sustained only when a judgment is absolutely void for want of jurisdiction, and not when the court has erred in some ruling. (23 Cyc. 1055.)

The matters complained of under points 1 and 2, above stated, do not go to the jurisdiction of the court, and hence cannot be considered in this case.

**3, 4.** The third point is one which goes to the jurisdiction of the court to render the judgment in the case of *Topogna and Gardella* v. *Ramsey Comstock Mining Company*. In support of appellant's contention it is urged that the return of the sheriff shows affirmatively that service was made upon one whom the law does not recognize as a person upon whom service can be made for a foreign corporation. The service was made upon "A. H. Mayne, Manager of said Ramsey Comstock Mining Company." At the time of the service of the summons there were two acts which provided for the service of summons on a foreign corporation. One was "An act to require foreign corporations and associations to name and keep agents in this state upon whom all legal process may be served," approved February 25, 1889, being section 899, Cutting's Compiled Laws, which reads:

"Every incorporated company or association created and existing under the laws of any other state, or territory, or foreign government, or the government of the United States, owning property or doing business in this state, shall appoint and keep in this state an agent upon whom all legal process may be served for such corporation or association. Such corporation shall file a certificate, properly authenticated by the proper officers of such company, with the secretary of state, specifying the full name and residence of such agent, which certificate

shall be renewed by such company as often as a change may be made in such appointment, or vacancy shall occur in such agency."

The other was section 29 of "An act to regulate proceedings in civil cases in the courts of justice of this state, and to repeal all other acts in relation thereto," approved March 8, 1869, being section 3124, Cutting's Compiled Laws, which reads:

"* * * Second—If the suit be against a foreign corporation or a nonresident * * * stock company or association, doing business within this state, to an agent, cashier, or secretary, president, or other head thereof."

We will concede, at the very outset, that if the provision which we first quoted had provided an exclusive method of making service of summons against a foreign corporation, the service of the summons would not have given the court jurisdiction. (*Karns* v. *State Bank & T. Co.*, 31 Nev. 170, 101 Pac. 564.) But the method therein provided was not exclusive, for it is expressly provided in section 3 of said act that "This act shall be [considered] as giving an additional mode and manner of serving process and as not affecting the validity of any service of process hereafter made, which would be valid under any statute now in force." (Comp. Laws, sec. 901.)

Since every presumption is indulged in favor of the validity of a judgment of a court of general jurisdiction, let us consider if the complaint in this case affirmatively shows that the court did not have jurisdiction in the case of *Topogna and Gardella* v. *Ramsey Comstock Mining Company*. The return of the sheriff shows that service was made by delivering a true copy of the summons and complaint to A. H. Mayne, manager of the Ramsey Comstock Mining Company. Since the statute said nothing about service being made on the "manager" of a corporation, the question is: Was the manager such an "agent" or "other head" of the company as contemplated by the statute? An "agent is one who has authority to act for another." (1 Words and Phrases, 262.) Surely one who is

entrusted with the duty of managing the business of a corporation is an agent of the very highest order. We are of the opinion that the service upon the manager of the Ramsey Comstock Mining Company was valid legal service, and such as gave the court jurisdiction over the defendant in the case.

5. It is also contended that the complaint which appellant filed in the district court was sufficient in an action to quiet title. We think not. An action to quiet title is based upon the presumption that the plaintiff has title. Appellant does not claim in his complaint to have any title whatever, but alleges that the sheriff, defendant Randall, refuses to convey title to him, and prays that a decree be entered directing said defendant to convey the property to him. But it is said that if he has no such title as will sustain an action to quiet title, he has a right to the property as a redemptioner. His right of redemption expired when he failed to redeem from the Topogna-Gardella judgment within the time allowed by the statute and before the issuance of the sheriff's deed.

6. It is also contended that the judgment in the Ross case, being for labor (held under assignment by appellant), is a prior lien to the one in the Topogna-Gardella case, under the terms of section 2223, Revised Laws, which reads:

"In every case in which   *   *   *   liens are asserted against any property, the court, in the judgment, must declare the rank of each lien, or class of liens, which shall be in the following order, viz: First—Labor. Second— All persons other than original contractors and subcontractors.   *   *   *  "

It is clear from this section that it is meant that in each particular case (suit) the court in the judgment (in that suit) must declare the rank of the lien. When Ross failed to exhibit his lien in the Topogna-Gardella case he waived his rights (sec. 2227, *supra*) so far as Topogna and Gardella and those who did exhibit their liens in that case are concerned. (*Hunter* v. *Truckee Lodge,* 14 Nev. 24.) See, also, *Skyrme* v. *Occidental M. & M. Co.,* 8 Nev. 231;

*Mars* v. *McKay*, 14 Cal. 128; Bloom on Mechanics' Liens, sec. 627.)

For the reasons given, the judgment is affirmed.

### ON REHEARING

By the Court, COLEMAN, J.:

1. Upon the argument on rehearing it was not contended that we incorrectly stated any principle of law in the opinion; but it was strenuously urged that, in view of the fact that all labor liens were originally on an equal footing, nothing could have happened thereafter to give the claimants in the Topogna-Gardella cases a priority over the other claimants, relying apparently upon the broad equitable rule that equity considers that done which ought to have been done. But it must be remembered that in litigation, as in every pursuit, there must be an orderly method of procedure. A man may have an equitable right, but there is nothing to prevent his waiving it, and by a certain course of action being estopped from asserting it. It does not follow that because an equitable right once existed it will always exist. To avail oneself of an equitable right, it must be asserted in apt time and diligently prosecuted. In view of appellant's theory, the following language, from 10 R. C. L. 262, is of interest:

"In the preliminary discussion relative to the true nature of equity, emphasis was laid on its function as a corrective of proceedings at common law. But from this it must not be supposed that equity exercises a species of extraordinary jurisdiction, bounded by no certain limits or rules save those imposed by the individual conscience and natural sense of justice of the particular chancellor before whom a case is being tried. Doubtless, in the early history of English equity jurisprudence, there was much to justify the caustic criticism of the great Selden that 'Equity in law is the same that the spirit is in religion, what every one pleases to make it.' In the infancy of courts of equity, before their jurisdiction was settled, the chancellors themselves exercising

a delegated authority from the crown, as the fountain of administrative justice, whose rights, prerogatives, and duties on the subject were not well defined and whose decrees were not capable of being resisted, undoubtedly acted on principles of conscience and natural justice without much restraint of any sort. Today, however, the rules and maxims of a court of chancery are as fixed and certain as those which govern inferior jurisdiction; and. a court of equity has no more right than has a court of law to act on its own notions of what is right in a particular case, but must be guided by the established rules and precedents. Equity is flexible only as to circumstances in the modes of relief of which its forms render it capable; but otherwise the systems of jurisprudence in courts of law and equity are now equally artificial systems, founded on the same principles of justice and positive law, and their office is not to oppose but each in its turn to be subservient to the other. The discretion exercisable by a chancellor will, therefore, in some cases follow the law implicitly, in others assist it, and advance the remedy; in others again, it may relieve. against the abuse, or possibly allay the rigor of it. But in no case does it contradict or overturn the ground or principles thereof, nor can a court of equity create new rights, not before existing at law, and then take jurisdiction to pass on and enforce them because the law affords no remedy."

2. While the mechanics' lien law should be liberally construed, it is purely a creature of the statute; and, to enable one to acquire and enforce a right under it, there must be a substantial compliance with the statute. No contention was made upon rehearing that the court had not acquired jurisdiction in the Topogna-Gardella case, nor can it be said that the court lost jurisdiction over the proceedings so that it could not render the judgment that was rendered in that case, unless the action on the part of the court in refusing to grant a continuance on January 20, 1911, had such effect. In the complaint it is alleged:

"Plaintiff further avers on his information and belief

that at the said hour (January 20, 1911), and at the time said causes of John Topogna and M. G. Gardella were brought to be heard, on the *ex parte* motion of said Mack & Green, attorneys for said persons, and before the trial of said causes proceeded, John Lothrop, Esq., appeared as the attorney of record of said William Ross and said W. J. Gruss, and then and there objected to further proceedings being had in said cause, until such time as the said William Ross and said W. J. Gruss could appear and join in the foreclosure of the several liens of record held by them, and for grounds of delay in the trial of said *ex parte* action, the court was informed by said attorney that another suit was then and there pending for the foreclosure of the several liens represented by said attorney, and that at the proper time the said persons would appear and join in the foreclosure of the said liens, against the same property for which foreclosure was then and there requested by Mack & Green; that the judge of said court, to wit, the Honorable Frank P. Langan, the judge of said court, then and there refused to sustain said objection of the said attorney; whereupon the said attorney asked and was granted an exception to the ruling of the court in said cause, on the grounds that another suit was pending for the same cause in said court, and that said court had no jurisdiction to enter a decree in said cause alone, and without bringing in all parties plaintiff therein."

**3.** What deduction must be drawn from this allegation? Bearing in mind that Topogna and Gardella had brought their suit in November, 1910, and had given proper notice to other claimants to exhibit their liens, and on January 20, 1911, appeared for the purpose of proving up their claims, and that other lien claimants having had an opportunity to exhibit their liens in the suit pending and having elected to institute an independent suit appeared in court by attorney and stated that "another suit was then and there pending for the foreclosure of the several liens represented by said attorney, and that at the proper time the said persons would appear and join in the foreclosure of the said liens, *   *   * *" was it the duty of the

court to do more than it did do?  Topogna and Gardella, and other claimants who had exhibited lien claims in that suit, were in court and ready and anxious to make proof of their claims, while Ross and associates were objecting to the court hearing the evidence, and elected not to consolidate their claims with the other suit; basing their election and objection on the sole ground that that was not the "proper time" for them to do so.  No further explanation or reason for their action was given; no time was stated when it would be "proper time" for them to join; they did not contend that it was impossible for them to make their proof at that time.  They might elect to settle their claims out of court and assert perpetually that the proper time had not arrived.  Certainly the court would not undertake to compel them to come in and offer testimony in support of their claims, when they clearly manifested a desire to adopt another course.

The statute (section 2227, Rev. Laws, partly quoted in the former opinion) had fixed the manner of bringing in other lien claimants and the time within which they should exhibit their claims, and also provided "*  *  * and all liens not so exhibited shall be deemed to be waived in favor of those which are so exhibited."  It is evident that the legislature had a purpose in providing this summary method of enabling lien claimants to become parties to an action, and for providing that all who did not exhibit their claims should be deemed to have waived them, so far as the plaintiff and those who did exhibit their claims were concerned.

4.  It is not now contended that service in the Topogna-Gardella case was not a valid service.  This being true, the court had jurisdiction over both the subject-matter and the defendant; and, even if it was the duty of the court to enter an order consolidating the Ross case with the Topogna-Gardella case, its failure to do so was only an error in the exercise of jurisdiction, and one which could be asserted on appeal only, and not in a proceeding of this character.

5.  Counsel stated in his argument that there was no court on December 17, 1910, when the notice in the

Topogna-Gardella case directed other lien claimants to exhibit their liens. But there is no allegation in the complaint to that effect; and the case being before us on appeal from an order sustaining a demurrer to the complaint, we cannot look back of the complaint to ascertain what the facts were; and for that reason, if for no other, there is nothing in that suggestion. That point seems to have been an afterthought on the part of counsel.

Having reached the conclusion that the court had jurisdiction at every stage of the proceedings in the Topogna-Gardella case, it follows that we cannot reverse the judgment of the lower court in the case at bar without overturning well-established principles of law. If we reverse this case, it will be tantamount to saying that a judgment is of no substantial force and effect; it would be a waste of time and effort to undertake to depict the consequences.

**6, 7.** Assuming, however, that the facts are as alleged in the complaint, it will not be out of place here, for the benefit of similar cases in the future, to say that a different course upon the part of court and counsel would have protected the rights of all and have avoided subsequent fruitless litigation with its attendant delay and expense. Unquestionably, the suit instituted by Ross and the other lien claimants joined therein should have been consolidated with the Topogna and Gardella suits. (Rev. Laws, 2224.) In the Ross suit were involved the greater number of labor liens, and the amount involved was greatly in excess of that involved in the Topogna and Gardella suits. The labor liens were preferred claims and entitled to be paid out of the proceeds of the sale of the property in advance of other classes of lien claimants. (Rev. Laws, 2223.)

**8–11.** It appears from the complaint in this action, that when the Topogna-Gardella case came on for hearing upon notice to all the lien claimants as required by the statute (Rev. Laws, 2227), counsel for claimant in the Ross suit asked for a continuance in order that his clients might present their proofs and excepted to the

order of the court refusing the same. No appeal was taken from the judgment and order in that case, and whether or not the court erred cannot be determined now upon a collateral attack upon that judgment. The facts as they were presented to the court may, and upon collateral attack it is presumed they did, justify the order. We can only now say that trial courts, in actions to foreclose one or more liens, where it appears that there are other lien claimants, and especially where it appears that other suits are pending for the foreclosure of all or a portion of such other liens, should endeavor within all reasonable limitations to protect the rights of all lien claimants in one judgment. The purpose of the statute is to protect the rights of all lien claimants, and procedure should be extremely liberal to that end. The court of its own motion could have consolidated all the lien actions. It could have heard the proofs in the Topogna-Gardella cases and have granted a reasonable continuance for the hearing of the proofs in the other cases. As before stated, the manifest purpose of the lien statute justifies great liberality in a matter of this nature. Upon the other hand, the statute contemplates a summary procedure and provides that "all liens not so exhibited shall be deemed to be waived in favor of those which are so exhibited." (Rev. Laws, 2227.) Where no proofs were offered in the original suit of the liens involved in the Ross action, no request made for a consolidation, and no appeal taken from the order refusing a continuance, we see now no way to avoid the specific provisions of the statute which imposes a waiver in favor of the liens decreed to be foreclosed in the Topogna-Gardella judgment.

Perceiving no error in the order and judgment appealed from, it is ordered that the same be affirmed.