[No. 2213]

GEORGE A. PHILLIPS, PLAINTIFF AND INTERVENER; CHARLES O. DAHLSTROM AND LOUIE AMEDEO, INTERVENERS AND RESPONDENTS, *v.* THE SNOWDEN PLACER COMPANY (A CORPORATION), THOMAS WILSON AND M. E. WILSON, DEFENDANTS AND APPELLANTS.

[160 Pac. 786]

1. JUSTICES OF THE PEACE—LIENS—ENFORCEMENT—JURISDICTION—CONSTITUTIONAL AND STATUTORY PROVISIONS—"SUM INVOLVED."

Const. art. 6, sec. 8, enacted while Stats. 1861, c. 15, was in force in the territory, providing for the foreclosing of all liens in one action, requires the legislature to fix the powers of justices of the peace, and authorizes it to confer jurisdiction upon them, concurrent with the district courts, of actions to enforce mechanics' liens wherein the amount does not exceed $300. Rev. Laws, 5714, is to the same effect, and section 2224 allows any number of lien claimants to join in the same action and the court to consolidate separate actions; and section 2227 provides that such liens may be enforced by an action in any court of competent jurisdiction, and, as amended by Stats. 1907, c. 90, applies to mechanic's lien proceedings in justice's court where the sum involved does not exceed $300. *Held*, that the words "sum involved" mean the sum involved in the several liens embraced in a suit, and that a justice's court had no jurisdiction of an action to foreclose mechanics' liens, where the total amount of the liens exceeds $300, notwithstanding each of the liens is for a less amount.

2. CONSTITUTIONAL LAW—CONSTRUCTION—DEBATES.

In the construction of a constitutional provision, it is not improper to examine the debates on the subject, though they are not authoritative, as it is the text of the constitution which was adopted.

3. JUSTICES OF THE PEACE—APPEAL—JURISDICTION—JURISDICTION OF LOWER COURT.

The general rule is that the district court acquires no jurisdiction to try a cause on appeal from a justice's court, where the justice's court was without jurisdiction to entertain the case and render judgment therein.

4. JUSTICES OF THE PEACE—APPEAL—JURISDICTION—DISTRICT COURT—CONSENT.

Where the justice's court had no jurisdiction of a suit to enforce mechanics' liens wherein the aggregate amount involved exceeded $300, but where the district court had original concurrent jurisdiction of the subject-matter, without such limitation as to amount, and where the defendant therein, after judgment for the plaintiff and the intervening claimants, appealed to the district court, where trial was had without

any question being raised as to its jurisdiction, he was estopped to thereafter question the district court's jurisdiction on the ground that it had no greater jurisdiction on appeal than the justice's court.

5. APPEAL AND ERROR—FINDINGS—PRESUMPTION—EVIDENCE TO SUPPORT.

Where the evidence is not included in the transcript, the supreme court is bound to assume that it supports the findings.

6. MINES AND MINERALS—MECHANICS' LIENS—POSTING OF NOTICES—SUFFICIENCY—STATUTE.

Under Rev. Laws, 2221, providing that an improvement on land with the owner's knowledge shall subject the owner to a lien unless, within three days after his knowledge of the improvement, he gives notice that he will not be responsible therefor by posting a notice in writing to that effect in some conspicuous place upon the land, etc., a notice posted at the collar of a mine shaft, which the owner, when he entered into an agreement with the contractor, knew would necessarily be destroyed in preparing the shaft for mining operations, and which was so destroyed prior to the contractor's employment of the claimants, was not binding upon the claimants, as a notice must be so posted as, under ordinary conditions, it will remain a reasonable length of time, though a written notice in lead pencil would be as good as any other notice.

7. MINES AND MINERALS—MECHANICS' LIENS—PROCEEDINGS—COSTS.

In a suit to foreclose mechanics' liens for work done under a contractor for mining work, brought in a justice's court, the allowance of costs to the plaintiff and intervening claimants in that court was erroneous.

APPEAL from the Fifth Judicial District Court, Nye County; *Mark R. Averill,* Judge.

Action to foreclose a mechanic's lien by George A. Phillips against the Snowden Placer Company and others, in which Charles O. Dahlstrom and Louie Amedeo, lienholders, were permitted to intervene. Judgment in the district court in a trial *de novo* on appeal from a justice's court, in favor of the plaintiff and the interveners. Motion for new trial denied, and defendants appeal. **Modified and affirmed.** COLEMAN, J., dissenting in part.

STATEMENT OF FACTS

This case involves the foreclosure of a mechanic's lien in the sum of $200 claimed by the plaintiff, and a similar lien for the sum of $260 claimed by Louie Amedeo, also a similar lien for $255 claimed by Charles O. Dahlstrom;

the liens being respectively claimed against the Black Cat mining claim, situate in Manhattan mining district, Nye County, Nevada.

The facts, as shown in the record, disclose that the appellants Wilson and Wilson were the owners of the Black Cat mining claim, and that they leased the claim to the Snowden Placer Company; that the Snowden Placer Company operated the ground by placer mining, and in the course of such operations employed the plaintiff, Phillips, and the interveners, Amedeo and Dahlstrom, to perform work upon the ground. The Snowden Placer Company having failed to pay the plaintiff and interveners the respective sums claimed by them, a lien was filed by plaintiff, and the liens of the interveners, Amedeo and Dahlstrom, were filed for record on the same day.

Subsequently suit was commenced in the justice court of Manhattan township to foreclose the lien of Phillips, in which suit the justice court made an order on November 1, 1913, that the said Amedeo and Dahlstrom be permitted to intervene, and such intervention was thereupon had. The Snowden Placer Company made no appearance. The defendants Wilson and Wilson appeared and filed their answer, alleging that they were the owners of the Black Cat mining claim; that the mining operations conducted thereon, according to their information and knowledge, were conducted by one R. T. Ashley; and that they had no knowledge of mining operations conducted on said claim by the Snowden Placer Company.

A trial was had in the justice court before a jury, and resulted in a disagreement, and thereupon the trial of the cause was set and a jury was again had, and a verdict was returned in favor of the plaintiff and against the defendants Wilson and Wilson to the extent of their interest as owners of the mining claim described in the complaint, and a judgment was entered in favor of Phillips for $200, with interest at 7 per cent per annum from October 9, 1913, with costs of suit, and $3 for filing lien claim, also for the sum of $260 in favor of Amedeo, intervener, together with $3 cost of filing lien claim, also

for the sum of $255 in favor of Charles O. Dahlstrom, intervener, together with $3 cost of filing lien claim, and $75 attorney's fee allowed by the justice court.

An appeal was thereupon taken from the justice court to the district court, and the trial was had, and the district court ordered that judgment be entered in favor of plaintiff in the sum of $195, with $50 attorney's fee; for the intervener Amedeo, $250, and $60 attorney's fee; for the intervener Dahlstrom, $250, and $60 attorney's fee. From the judgment, and from an order denying a motion for a new trial, an appeal has been taken to this court.

*H. R. Cooke*, for Appellants:

The justice court had no jurisdiction, the aggregate of the three liens being in excess of the amount over which the said court has jurisdiction; consequently, the district court had no jurisdiction on the appeal. The district court can take no jurisdiction on appeal of a case of which the justice court had no jurisdiction. (Const. Nev., sec. 8, art. 6; Rev. Laws, 5714; *Fitchett* v. *Henley*, 31 Nev. 326.)

The law does not require the maintaining of the non-liability notice during the entire time that the work is being carried on, or for any period whatsoever. All that is required is that the owner "give notice that he will not be responsible for the same, by posting a notice in writing to that effect." (Rev. Laws, 2221; *Marshall* v. *Cardinell*, 80 Pac. 652.)

No strict construction should be indulged in against the owner of the property. If the nonliability notice was posted within three days after construction is actually commenced on leased land, it is sufficient, though the owner had knowledge for a longer period of the intention to construct. (*Birch* v. *Magic Transit Co.*, 73 Pac. 238.)

If a party fail to file a cost bill within the time prescribed, he waives his right to costs. (*Linville* v. *Scheeline*, 30 Nev. 106.) The cost bill in the district court was not filed in time, and therefore had no efficacy whatsoever. (Rev. Laws, 5387; *Beco* v. *Tonopah Ex. M. Co.*, 37 Nev.

199.) Costs should follow the judgment; the justice court judgment is dead, and therefore cannot be followed by costs. The only judgment that costs can follow is the one in the district court, and then only by being claimed in the manner and within the time provided by law.

*H. H. Atkinson,* for Respondents:

It is not the "amount of the liens sought to be enforced" that confers jurisdiction on the court, but "the amount of the lien sought to be enforced." As long as the lien claim sought to be enforced is less than $300, the justice court would have jurisdiction and power to consider it, whether the lien claim be made the object of an individual suit, or whether the owner of this lien claim appears as one of many claimants or plaintiffs, all having claims less than $300, and bringing them in one action against the defendant, claiming judgment severally against the defendant. It is not the amount that is involved in an action which determines the jurisdiction of the court, but it is the amount for which judgment is prayed by the person in his pleading. (*Klein* v. *Allenbach,* 6 Nev. 159; *Thomas* v. *Anderson,* 28 Cal. 99; *Derby* v. *Stevens,* 30 Pac. 820; *Succession of Justus,* 16 South. 840; *Miller* v. *Carlisle,* 59 Pac. 785; *Briggs* v. *Hall,* 141 Pac. 1067.)

When the constitution and the statutes conferred upon the justice court jurisdiction concurrent with the district court of actions for the enforcement of mechanics' liens, where the amount of the lien sought to be enforced, exclusive of interest, does not exceed $300, it conferred upon the justice court the jurisdiction to enforce a mechanic's lien in the same manner as it could be enforced in the district court, the only limitation upon those powers conferred being the one which prohibited the justice court from considering a lien where the demand amounted to more than $300. Confusion would result from such a lack of power. Where there were several lien claimants holding liens for sums less than $300, respectively, it would be impossible for the court in any separate action

to determine the rank of the lien. (*Willamette S. M. L. & M. Co.* v. *Los Angeles C. Co.*, 94 Cal. 229, 29 Pac. 625.)

The justice court, as the court of original jurisdiction, and the district court, in its appellate capacity, had power and jurisdiction to hear and determine the claims of plaintiff and interveners and to render judgment thereon.

The notice of nonliability must be posted within three days after the date the owners know of the intended construction or of the actual commencement of the work. A mere perfunctory posting is not sufficient. It must be of such a nature as is intended to give notice, and the posting must be in good faith. When evidence is not in the record, the appellate court will not consider the question whether the verdict is contrary to law, or whether it is contrary to the evidence. (*Oberlin* v. *Kronenberger*, 50 Ind. 365.) "A finding of fact by the trial court is conclusive on appeal when the evidence is not in the record." (*Stewart* v. *Hollingsworth*, 129 Cal. 177, 61 Pac. 936; *Miller & Lux* v. *Enterprise C. & L. Co.*, 145 Cal. 652, 79 Pac. 439; *Mound City L. & S. Co.* v. *Miller*, 70 L. R. A. 190; *Whitehouse* v. *Aiken*, 190 Mass. 468, 77 N. E. 499; *Sayer* v. *Brown*, 119 Ga. 539, 46 S. E. 649; *King* v. *King*, 215 Ill. 100, 74 N. E. 89; *Place* v. *Conklin*, 54 N. Y. S. 532.)

The plaintiff need not allege in his complaint that the notice was not given by the owner of the ground; that is a matter of defense to be set up by the defendant, and must be proven by the defendant by a preponderance of evidence. (*West Coast L. Co.* v. *Newkirk*, 80 Cal. 275, 22 Pac. 231.)

Where the lessor had knowledge of lessees' intention to make improvements, and where no notice disclaiming responsibility was posted, the lessor is charged with knowledge sufficient to put him upon inquiry as to the particular facts relating to the improvement. (*Evans* v. *Judson*, 120 Cal. 282, 52 Pac. 585; *Moore* v. *Jackson*, 49 Cal. 109; *Santa Monica L. & M. Co.* v. *Hege*, 119 Cal. 376, 51 Pac. 555.)

The costs of the justice court, after being determined,

became a part of the judgment. If the judgment is appealed from on question of law and fact, the costs are a part to be considered on the appeal. They will be taken 'up by the district court in the consideration of the case, and the court will make its findings and render judgment thereon before the cost bill in the district court is filed. (Rev. Laws, 5387, 5778.)

By the Court, NORCROSS, C. J.:

After two trials in the justice court and a trial *de novo* in the district court on appeal from the judgment of the justice's court, the question of the jurisdiction of the justice's court to try the case originally, and of the district court to try the case as on appeal, is raised for the first time on appeal to this court. The question, however, is one of great importance, not only to the parties to the present action, but because it goes to a matter of procedure based on the organic law of the state.

**1.** Section 8 of article 6 of the state constitution, in part, reads:

"The legislature shall determine the number of justices of the peace to be elected in each city and township of the state, and shall fix by law, their powers, duties and responsibilities; *provided*, that such justices' courts shall not have jurisdiction of the following cases, viz.: * * * Of cases that in any manner shall conflict with the jurisdiction of the several courts of record in this state; *and provided further*, * * * the legislature may confer upon said courts, jurisdiction concurrent with the district courts, of actions to enforce mechanics' liens, wherein the amount (exclusive of interest) does not exceed three hundred dollars. * * *"

By the statute it is provided that the justices' courts shall have—

"concurrent jurisdiction with the district courts of actions for the enforcement of mechanics' liens, where the amount of the lien sought to be enforced, exclusive of interest, does not exceed three hundred dollars." (Rev. Laws, 5714, subd. 11.)

There is some slight difference in the wording of the constitution and the wording of the statute cited *supra;* but, as the legislature cannot by statute confer a broader jurisdiction upon justices' courts than that authorized by the constitution, we need only consider the language of the constitution.

It is the contention of counsel for appellant that the language of the constitution, cited *supra,* does not contemplate the conferring of jurisdiction upon justices' courts of an action to foreclose two or more mechanics' liens where the aggregate amount of the liens exceeds $300, notwithstanding each of the several liens sought to be foreclosed in an action is for an amount less than $300. We agree with this contention of counsel. Our attention has not been called to a similar provision appearing in the constitution of any other state which has been construed. At the time this provision was under consideration by the constitutional convention, it was contended by Mr. Brosnan (afterwards a justice of this court) that none of the state constitutions distinctly defined the jurisdiction of justices of the peace, but that such jurisdiction was a matter which the legislature was empowered to fix, citing "American Constitutions." (Nevada Constitutional Debates, p. 691.)

Examining the history of this provision of our constitution, we find that the original proposed draft of the section recommended by the committee did not contain such provision. In this connection we find the following resolution offered by Mr. Banks:

"*Resolved,* That article 6 be referred to the judiciary committee, with instructions to amend the same so as to give to justices of the peace jurisdiction in all cases of forcible entry and unlawful detainer, and mechanics' liens, where the amount involved does not exceed three hundred dollars." (Nev. Const. Debates, p. 688.)

Discussing this proposed amendment, Mr. De Long is reported (page 688) as saying:

"Suppose we confer jurisdiction, as he proposes, to the extent of $300, in cases of mechanics' liens. There may

be one mechanic who claims a lien of only $300, and he brings his suit before a justice of the peace. But the law requires that all other parties holding liens on that property, when he commences to foreclose, shall come forward and present their claims, and it is a principle of equity that the first claimant shall be estopped from proceeding until all the other claims are united with his. Consequently, there are several men having liens, to the amount of $10,000, perhaps, on the same building. They cannot present that case in a justice's court, because the court cannot render a judgment for such an amount; and what are you going to do? It is evident that you cannot settle it by one suit, and consequently you must permit a multiplicity of suits. Suppose we engraft in the article the provision which the gentleman suggests, what is to be done in a case where there is one lien of $10,000 and another of $300? Both liens must be paid, and the proper way is to have them all come in together, that the chancellor may make his decree in such manner that full and fair equity may be done to all; but under this provision the $300 man would be obliged to go off and commence suit on his own hook. It would certainly increase the difficulties in the way of obtaining justice for the poor man."

To these remarks Mr. Banks is reported (page 689) as replying as follows:

"I wish to reply to that portion of the speech of the gentleman from Storey (Mr. De Long), in which he refers to mechanics' liens, and what would be the course of proceeding in such a case as the one to which he has referred. Now suppose, for instance, that this amendment be adopted, and one man brings his suit under the mechanic's lien law, claiming that he is entitled to receive some amount less than $300; then others come in with their claims, amounting in the aggregate to a sum which exceeds $300. At the very worst, all that is then required is to transfer the case to a court of competent jurisdiction. Such has been the practice in California, and no doubt it will be in this state, if we shall adopt this proposition."

The form of the provision as finally adopted was drafted by Judge Brosnan. (Debates, pp. 700–702.) Relative to the final draft, the following colloquy is reported (page 702) as occurring between Delegates Banks and Brosnan:

"Mr. Banks—Then I understand from the gentleman from Storey that, in case of the foreclosing of mechanics' liens, suit may be brought, within the amount of $300, in a justice's court. That is, it may be brought either in a justice's court, or the district court, provided the amount involved is less than $300.

"Mr. Brosnan—The mechanic having a lien to that amount has his choice of courts."

**2.** Relative to the consideration to be given expressions made in debate by delegates to the constitutional conventions, this court in *State ex rel. Lewis* v. *Doron*, 5 Nev. 409, said:

"It is not improper in this connection to examine the debates upon the subject, though of course they are not authoritative, nor is any binding effect to be given them, as it is the text of the constitution which the people adopted."

See, also, *Moore* v. *Orr*, 30 Nev. 470, 98 Pac. 398.

It is the "amount" which cannot exceed $300 according to the language of the section. What amount? The amount of one particular lien, or the amount of several liens which the action may be instituted to foreclose? The law in force in the territory of Nevada at the time of the adoption of our constitution, as the law of the state now provides, made provision for the foreclosing of all liens in one action. (Stats. 1861, p. 37.) Referring to the lien law of California, the supreme court of that state in *Mars* v. *McKay*, 14 Cal. 128 (decided in 1859), said:

"The idea of a multiplicity of suits in cases like the present is expressly excluded. The statute requires that every lien on the same property shall be litigated and enforced in the same action, and every suit brought to enforce a particular lien must be regarded as a proceeding to enforce all the liens against the same property."

The lien law adopted in 1875, now in force in this state,

contemplates the foreclosure of all liens in one action. It is provided in section 12 (Rev. Laws, 2224):

"Any number of persons claiming liens may join in the same action; and when separate actions are commenced the court may consolidate them."

By section 15 (Rev. Laws, 2227) it is also provided:

"Said liens may be enforced by an action in any court of competent jurisdiction," etc.

The provisions of this section clearly contemplate the foreclosure of all liens in one action and one judgment. By an amendment (Stats. 1907, p. 192) the provisions of this section—

"as to action on, trial of, and sale of premises under mechanics' liens, shall be applicable to such actions in a justice court, where the sum involved does not exceed three hundred dollars."

What did the legislature mean by the words "sum involved" as used in this amendment? We think the words here used are susceptible to no other meaning than the sum involved in the several liens embraced in the suit. This, we think, may be taken as a construction by the legislature of the provisions of the constitution, and is entitled to consideration as a construction by a coordinate branch of government. In the recent case of *Daly* v. *Lahontan Mines Co.*, 39 Nev. 14, we said:

"Trial courts, in actions to foreclose one or more liens, where it appears that there are other lien claimants, and especially where it appears that other suits are pending for the foreclosure of all or a portion of such other liens, should endeavor within all reasonable limitations to protect the rights of all lien claimants in one judgment."

In *Elliott* v. *Ivers*, 6 Nev. 290, this court said:

"The statute undoubtedly contemplates a formal suit, a publication of notice, an appearance upon the part of lien claimants other than those commencing the suit, and a disposition of the entire matter of liens against the property affected, in one proceeding."

See, also, *Lonkey* v. *Wells*, 16 Nev. 271, 277; *Skyrme* v. *Occidental M. Co.*, 8 Nev. 231.

We think the provision of the constitution in question ought to be so construed as not to confer jurisdiction upon justices' courts to foreclose mechanics' liens, where the total amount of all the liens involved in the suit exceeds $300. We think the wording of the section is more in harmony with this construction than the one to sustain a more extensive jurisdiction. The construction is in harmony with what seems to have been the intent of the framers of the constitution, and better accords with the provisions of the statute as it existed both before and since the adoption of the constitution. If any other construction were given to this provision of the constitution, we would have this anomalous situation. Several liens might be filed upon a certain property, some of which were for amounts less than $300, and some of which were for amounts exceeding $300. If suit were instituted in the justice's court upon one or all of the liens less than $300, those in excess of $300 could not be exhibited and foreclosed in that action. Another suit would have to be instituted in the district court upon these latter liens. The statute could not be complied with in either case, unless the suit in the justice's court was abandoned or dismissed and the liens involved in that suit exhibited in the district court. As all lien claims must be recorded within a prescribed time, it is an easy matter for a litigant to determine whether the total amount of the liens will be in excess of the jurisdiction of the justice's court.

**3, 4.** It is contended by counsel for appellant that the judgment rendered by the district court is void, because the district court had no greater jurisdiction on appeal than did the justice's court in the trial originally. This court in a number of cases has held that the district court acquired no jurisdiction to try a cause on appeal from a justice's court, where the justice's court was without jurisdiction to entertain the case and render judgment therein. (*Fitchett* v. *Henley*, 31 Nev. 341, 102 Pac. 865, 104 Pac. 1060, and authorities therein cited.) It must be conceded that this is the general rule, which is supported

by many authorities. (24 Cyc. 641.) The rule in many instances has been harshly applied. It is a rule, however, not without exceptions.

"While it has been held that, where the justice of the peace had no jurisdiction of the subject-matter of an action, the parties cannot confer jurisdiction on the appellate court by consent, the better view seems to be that, where the appellate court has original as well as appellate jurisdiction of the cause, jurisdiction of both the subject-matter and the person may be conferred upon it by waiver or consent." (24 Cyc. 643.)

In *Stacy Fruit Co.* v. *McClellan*, 25 N. D. 449, 456, 142 N. W. 44, 46, the court said:

"But we can see no distinction in principle between this case and that of *Johnson* v. *Erickson, supra.* There, in a justice court proceeding, title to real property was brought in issue, whereupon, under the statute, it became the duty of the justice to forthwith certify the cause to the district court, but instead of so doing he dismissed it. Upon appeal it was urged, the same as here, that the district court was without jurisdiction because of the rule 'that the district court by virtue of an appeal succeeds only to the jurisdiction of the justice court, and that where the justice court has no jurisdiction the appellate court acquires none.' The court there says: 'In this case the justice not only had authority to transfer the case to the district court, but it was his express duty to do so. The distinction between this case, and those where there is no jurisdiction or no authority to transmit, is apparent. In such cases there is neither right nor duty to certify the case, and of course an appeal would not give jurisdiction. * * * The proceedings are irregular, but were made so by the error of the justice in rendering a judgment of dismissal, instead of certifying the case; and for this error the plaintiff is in no way responsible. * * * We are of opinion that when a justice has, by disregarding the statute, made it necessary to appeal, the district court acquires jurisdiction,

and that it is error for the district court to refuse to entertain the action and to dismiss the appeal; and this view is in harmony with the opinion of other courts under similar statutes.' There the justice pronounced an unauthorized judgment when, instead, he should have certified the case to the district court for further proceedings; yet the appeal from such unauthorized judgment was held to vest jurisdiction of the subject-matter in the appellate court, which ordinarily would have been transferred there without appeal by order of the justice. Here the justice court, having conceded jurisdiction of person and subject-matter, proceeds unauthorizedly, after it had become its mandatory duty to transfer the cause for trial to another justice court, and accordingly enters judgment, void because of want of power to enter any judgment at all, but from which defendant has seen fit to appeal generally upon both law and fact and demand a trial *de novo* in the appellate court. The statutes concerned in *Johnson* v. *Erickson,* and in the case at bar, are in effect analogous, both superseding jurisdiction to determine the merits. If an appeal from a void judgment of dismissal, as in *Johnson* v. *Erickson,* confers appellate jurisdiction of subject-matter, most certainly under these circumstances the appeal so taken generally must be held to confer jurisdiction of subject-matter as well as person upon the appellate court."

See *Johnson* v. *Erickson,* 14 N. D. 414, 105 N. W. 1104; *Heard* v. *Holbrook,* 21 N. D. 348, 131 N. W. 251.

In the case at bar, the justice's court had jurisdiction of the action as brought upon the Phillips complaint. It was also an action of which the district court had concurrent jurisdiction. It was not until Dahlstrom and Amedeo intervened to enforce their liens that it appeared that the justice's court was without jurisdiction to proceed to trial and judgment. When Dahlstrom and Amedeo intervened, it was, we think, the duty of the justice to certify the case to the district court. The situation was then analogous to that of a case where title to real property is

raised by answer or by evidence upon the trial. The jurisdiction to proceed to trial was not raised by defendant. After trial and judgment in favor of the plaintiff and intervening lien claimants, defendant took his appeal to the district court, where trial was again had without any question being raised as to the jurisdiction of either court. The question of jurisdiction was apparently not thought of until after appeal to this court.

It may be conceded that the judgment of the justice's court was a nullity, and no appeal, in the strict sense of the law, would lie therefrom. But the appeal had the effect of causing the case to be certified to the district court. Both parties proceeded to try the case upon the merits without questioning the jurisdiction. The subject-matter of the action was such that the district court had original jurisdiction to try. The parties submitted themselves without question to the jurisdiction of the court. This is not a case of an attempt to confer by consent jurisdiction of a subject-matter beyond the court's jurisdiction. Rather it should be regarded as a waiver of any technical objection which might have been raised as to the manner of acquiring jurisdiction. Where parties, without objection, proceed to the trial of a case, the subject-matter of which is within the original jurisdiction of the court, the rule of estoppel ought to apply against a subsequent questioning of jurisdiction. The modern tendency of courts is to break away from technical rules of practice. The sooner many rules, around which are encircled the halo of time-honored recognition, are modified, restricted, or entirely discarded, the sooner will courts perform the real function for which they were created, the adjudication of controversies between litigants upon their real merits. When that time arrives, and it is fast approaching, the occasion for dissertations by eminent lawyers, jurists, and laymen upon the "sporting theory of justice" will have ceased.

**5, 6.** Defendants interposed the defense of nonliability, based upon the posting of certain notices upon the premises. The statute provides:

"Every building or other improvement   *   *   *   constructed upon any lands with the knowledge of the owner   *   *   *   shall be held to have been constructed at the instance of such owner   *   *   *   and the interest owned. or claimed shall be subject to any lien filed in accordance with the provisions of this chapter, unless such owner   *   *   *   shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, or the intended construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon said land, or upon the building or other improvement situate thereon." (Rev. Laws, 2221.)

Relative to the matter of notices, the court made the following findings:

"That on or about the 1st day of March, 1913, when said agreement of March 1, 1913, between the defendants Wilson and Snowden Placer Company was entered into, there was already posted from previous operations a notice that the defendants Wilson of the Black Cat mining claim would not be responsible for debts incurred or labor or materials furnished for any operation upon. said Black Cat mining claim, but that said notice was in a damaged condition from exposure to the elements; that said notice was posted at the collar of a shaft which the defendants Wilson knew would be used by the Snowden Placer Company for operations, as soon as it commenced to work under the agreement of March 1, 1913, upon the Black Cat mining claim, and through which said shaft the said Snowden Placer Company would conduct all of its mining operations; that the said defendants Wilson knew that the notice thus posted upon a board, nailed at the inside of the collar of the shaft, would necessarily be destroyed in preparing said shaft for mining operations; that the said notice posted at said shaft was therefore not posted in good faith, by the defendants Wilson, so as to give notice to workmen employed by Snowden Placer Company in its operations upon said Black Cat mining claim; that said notice was destroyed on or before

March 10, 1913, while said shaft was being prepared for mining operations by employees of said Snowden Placer Company.

"That the said Thomas Wilson, on March 1, 1913, posted a notice on the transformer house of said Black Cat mining claim of the same purport to that which was posted at the shaft heretofore mentioned, and wrote the same in lead pencil upon paper which had long been exposed to the elements, and which defendant Thomas Wilson knew would not remain legible and intelligible for as long a time as under ordinary conditions an ordinary notice would be expected to remain, and that said notice was not posted in good faith to give notice for a reasonable length of time to workmen who would work upon said premises for the defendant, Snowden Placer Company; that said notice was illegible and unintelligible when plaintiff and interveners commenced their work upon the said Black Cat mining claim for Snowden Placer Company, defendant herein, and remained illegible and unintelligible to and including August 20, 1913, and was not posted in a conspicuous place on said claim, when said employment ceased; that said Thomas Wilson, on or about May 15, 1913, posted a notice on the engine house of said Black Cat mining claim of the same purport to that which was posted at the shaft heretofore mentioned, and wrote the same in lead pencil upon a piece of cardboard which the defendant Thomas Wilson knew would not remain legible and intelligible for as long a time as an ordinary notice would be expected to remain so, and therefore said notice was not posted in good faith to give notice for a reasonable length of time to workmen who were or would be working upon said Black Cat mining claim for the defendant Snowden Placer Company; that said notice was illegible and unintelligible at the time that the plaintiff and interveners commenced working upon the said Black Cat mining claim for the defendant Snowden Placer Company, and remained illegible and unintelligible up to and including the 20th day of August, 1913."

But one case is cited by respective counsel as an aid to the court in determining the question of the sufficiency of the notices posted as found by the court, to wit, the case of *Marshall* v. *Cardinell*, 46 Or. 410, 80 Pac. 652. From the opinion in that case we quote:

"The statutory manner of giving notice is by posting a written announcement, presuming, no doubt, that when once posted it will remain a sufficient length of time to impart knowledge to the persons it is intended to affect. The language is not to keep it posted, but to give notice by posting, and when once posted it will fulfil the mandate of the statute. Of course, if the notice were torn down immediately, or very soon after, by the one who posted it, there would be an apparent attempt to evade the statutory injunction, and the act would probably not be accounted as giving notice by posting; but if posted in good faith, with the intent and purpose that it should remain as long as a notice would remain in a place of that nature under ordinary conditions, it would seem that the intendment of the statute had been observed and the notice given."

The evidence is not included in the transcript, in which case we are bound to assume that the evidence supports the findings. It is found, however, that three notices were posted, and it is a question whether the court made proper legal deductions from the findings relative to these notices.

The first notice considered was posted at the collar of the shaft. It appears from the findings that this was a notice posted prior to the agreement entered into with the Snowden Placer Company. This notice, primarily intended for "previous operations," was "in a damaged condition from exposure to the elements." To what extent it was damaged does not appear, but in view of other portions of the findings this fact is immaterial. It is found that at the time appellants entered into the agreement with the placer company they knew this notice "would necessarily be destroyed in preparing said shaft for mining operations"; that said notice was so destroyed prior

to respondents being employed by the placer company. The statute says a notice shall be posted "after" knowledge of the construction or intended construction, etc. Assuming, however, without deciding, that a prior notice would meet the requirements of the statute, we are clearly of the opinion that persons employed after the destruction of such notice ought not to be bound thereby, where it appears that the work contemplated necessitated a destruction of such notice.

The second notice discussed in the findings was posted March 1, 1913, the day the agreement was entered into between appellants and the placer company. This notice was written "in lead pencil upon paper which had long been exposed to the elements, and which Thomas Wilson knew would not remain legible and intelligible for as long a time as under ordinary conditions an ordinary notice would be expected to remain." This notice was found to have been "posted on the transformer house of said Black Cat mining claim." It was further found that it "was not posted in a conspicuous place on said claim." A notice posted on a transformer house might or might not be said to be posted in a conspicuous place. Ordinarily it would, we think, be very apt to comply with the requirements of the statute. The evidence is not before us, and we are bound to accept the finding that it was not in a conspicuous place.

Much has been said in the briefs of counsel for the appellant that the court, in effect, held that a notice must not only be posted but must be maintained. We do not so understand such to have been the position of the court below. A notice must be so posted as under ordinary conditions it will remain a reasonable length of time; otherwise there would be no object in posting a notice at all. A notice written in lead pencil would be as good as any other notice, but whether a notice so written and exposed to the elements would remain a reasonable length of time is a question of fact for the court below to determine from the evidence, and which this court could not disturb without reviewing the evidence.

The third notice considered was posted on the engine house May 15, 1913, two and a half months after the agreement with the placer company was entered into. It is not found that this notice was not posted in a conspicuous place. This notice was not posted within the time prescribed by the statute, nor has counsel cited any authorities holding that such a subsequent notice would be binding. Upon that question we express no opinion, further than to say that we are inclined to the view that such a notice would be a valid notice, but would have no retroactive effect. The court found this notice, also, to have been "illegible and unintelligible at the time that the plaintiff and interveners commenced working." It is further found that the defendant Wilson knew when he posted this notice that "it would not remain legible and intelligible for as long a time as an ordinary notice would be expected to remain so."

As before stated, the evidence is not before us, and none of these findings are attacked upon the ground that they are not supported by the evidence. So far as this court knows, the defendants may have admitted the very facts found. It must be conceded that the findings present questions of law to this court in a very unsatisfactory way. The law only says that a notice shall be posted. It says nothing about maintaining such a notice. It will not do, however, to say that the mere posting of any sort of a notice in a conspicuous place complies with the statute. A notice might be posted, so written that it would not remain intelligible for a day. Such a notice manifestly could not be held to comply with the law. The purpose of the statute is to give actual notice. The law only exacts a reasonable compliance with the statute, but what is a reasonable compliance must depend upon the facts of each particular case. A notice written in lead pencil on a piece of cardboard, or upon a piece of paper which had been exposed to the elements, might in every respect comply with the statute. If, however, it was so posted that any person of ordinary common sense would know that it would in a few days be effaced from

exposure to the elements, a court would be justified in holding such a posting not to be a compliance with the statute.

We cannot say as a matter of law in this case that the judgment is contrary to the findings.

7. The objection to the allowance of costs in the justice's court is well taken.

The judgment will be modified by striking therefrom the costs in the justice's court, and, as so modified, it is affirmed.

McCARRAN, J.: I concur.

COLEMAN, J., concurring:

I concur in the opinion and order of the court, except as herein indicated.

There is no question but that the justice of the peace had jurisdiction of the subject-matter and of the parties in the original suit brought by the plaintiff, Phillips. Pursuant to the constitutional provision quoted in the opinion of the court, the legislature, in 1913, conferred upon justices of the peace concurrent jurisdiction with the district courts in actions for the enforcement of mechanics' liens where the amount of the lien sought to be enforced, exclusive of interest, does not exceed $300. (Stats. 1913, c. 235, p. 360.) There is no doubt in my mind but that the judgment in favor of Phillips and against the defendants is valid, for the reason that, jurisdiction having been acquired by the justice of the peace, it was not lost by his making an order which he had no power to make. Certainly the making of an order which was void could not operate so as to oust the court of a case of which it had jurisdiction.

In the opinion of the court the remarks of Mr. Banks, a member of the constitutional convention, are quoted, wherein he stated that in cases which had arisen in California (similar to the one at bar) the practice was to transfer them to a court of competent jurisdiction. I am unable to find that justices of the peace of California

had jurisdiction to foreclose mechanics' liens on real estate prior to the date of the holding of our constitutional convention in 1864. The jurisdiction of justices of the peace in California was fixed by an act entitled "An act concerning the courts of justice of this state, and judicial officers," passed May 19, 1853. (Comp. Laws Cal. 1850–53, p. 738.) Section 67 of the act mentioned enumerates the subjects over which justices of the peace should have jurisdiction, but the foreclosure of mechanics' liens is not one of them. Section 68 reads:

"The jurisdiction conferred by the last section shall not extend, however—1st. To * * * 2d. Nor to an action for the foreclosure of a mortgage or the enforcement of a lien on real property. * * * "

It is therefore obvious that there never could have been such a practice in California. Mr. Banks probably had in mind a provision contained in section 581 of an act of California entitled "An act to regulate proceedings in civil cases, in the courts of justice of this state," passed April 29, 1851 (Comp. Laws Cal. 1850–53, pp. 623, 624), wherein it is provided that in actions in the justice of the peace court, if it shall appear that the title of real estate is involved, the proceedings shall be suspended and the case certified to the district court. We have such a provision in Nevada (Rev. Laws, 5721), but I do not think any one would contend that authority is given under that act to certify up a mechanic's lien suit. It is an elementary rule that courts of justices of the peace are of special and limited jurisdiction and that they must look to the statute for their authority to act. Since there is no statutory provision empowering justices of the peace to certify to the district court such cases as the one at bar, I am of the opinion that any such order would be void. (*Paul* v. *Armstrong*, 1 Nev. 82; *Corthell* v. *Mead*, 19 Colo. 391, 35 Pac. 741; *Storey* v. *Mueller*, 21 Cal. App. 301, 131 Pac. 764; 18 Am. & Eng. Ency. Law, 2d ed. p. 17.)

Notwithstanding the fact that the Dahlstrom and Amedeo judgments were void, the entire case was appealed to the district court. All of the matters which

were considered and acted upon by the justice of the peace were within the original jurisdiction of the district court. If the Phillips suit had been commenced in the district court, instead of in the justice court, there is no question but that Dahlstrom and Amedeo could have intervened, and a valid judgment have been rendered in favor of all of the parties. If Dahlstrom and Amedeo had not undertaken to intervene in the justice court, and judgment had been entered in that court for Phillips, and an appeal had been taken by the defendants, we see no reason why Dahlstrom and Amedeo could not have intervened in the district court. In fact, as I view the situation, that, in legal effect, is what must be held to have occurred; for the matter stood, when it reached the district court on appeal, as though there had been no intervention, as the justice of the peace had no power to authorize such procedure.

Hence I am of the opinion that, since appellants went to trial in the district court upon the theory that Dahlstrom and Amedeo were in fact interveners, it is too late for them to urge their objection in this court for the first time. (*McKenty* v. *Gladwin*, 10 Cal. 227; *Smith* v. *Penny*, 44 Cal. 161; *People* v. *Reis*, 76 Cal. 269, 18 Pac. 309; *Sanxey* v. *Iowa City Glass Co.*, 63 Iowa, 707, 17 N. W. 429.)

Holding the views expressed, I am of the opinion that the plaintiff, Phillips, should recover judgment for costs in both the justice and the district courts.