THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
AZZAM O. SABRI, Defendant-Appellant.

Second District   No. 75-326

Opinion filed April 21, 1977.

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Elgin, for appellant.

John Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant was charged in 1971 with the shoplifting from Marshall Field & Co. in Oakbrook Center of property with a value less than $150. A public defender was appointed at the arraignment and a bench trial was held before Jack T. Parrish, a nonlawyer judge. The defendant was found guilty of obtaining unauthorized control over property of Marshall Field & Co. and fined $90. We allowed the filing of a late notice of appeal and defendant filed this appeal in the latter part of 1975.

On the afternoon of June 23, 1971, a security officer of Marshall Field & Co., in response to a telephone call, went to the men's section of the store.

While she was standing about 25 feet from defendant she saw him take a tan suit off the rack. He bent down with the suit for about a minute and when he stood up he placed an empty hanger back on the rack. The security officer did not actually see him place the suit in the shopping bag he was carrying. The defendant walked away from the area and was stopped by the security officer, taken to her office and, in examining the Sears, Roebuck shopping bag he had, the tan suit and a pair of slacks were found. The defendant told the security officer that he had bought the suit from a man outside of Fields in the mall. In a pocket of the suit in question a set of keys were found. Defendant testifed in his own behalf and stated that a tall, big man approached him in the mall of the Oakbrook Shopping Center as the defendant was parking his motorcycle and the man asked him if he wanted to buy the suit which the man said he had just bought at Fields. Defendant further testified he was standing beside one Judy Stevens and he asked her for change for a $50 bill, which she did not have. He went into a store and changed the $50 bill and paid for the suit. He then entered Marshall Field's, carrying two Sears bags containing the suit and a pair of slacks he intended to exchange for a different size. He testified further that while waiting for the sales clerk to return with a pair of slacks he was purchasing, he noticed suits similar to the one he had bought from the tall, big man outside and that he took one of the suits off the rack and tried the jacket on. Defendant testified that he put the suit back on the rack and while walking out of the area he was stopped by the security officer. Judy Stevens testified in the defendant's behalf and said she saw him talking to a tall, big man and that the defendant purchased a suit from this man, paying cash. She further testified that she talked for about 10 minutes with the defendant and they then went their separate ways.

■■ The first argument of the defendant is that the complaint was void as it alleged that the defendant stole "various articles of men's clothing." In support of this contention the defendant has cited *People v. Meyers* (1947), 397 Ill. 286, 73 N.E.2d 288, where the supreme court held that an indictment was defective for failure to describe the goods stolen in any language other than "divers goods and chattels." Examination of *Meyers* discloses a most unusual situation in which the defendant was charged with larceny and burglary, pled guilty thereto and was sentenced to 1-14 years without the court stating whether the defendant was sentenced for either larceny or burglary or both. In *Meyers* the defendant, oddly enough with a sentence of 1-14 years, was in the penitentiary 16 years later when the supreme court considered the cause. Obviously the defendant was discharged from the penitentiary. We do not find Meyers to be controlling and it is to be observed that in the 30-year interim since that case was decided the Supreme Court of Illinois has recognized the

efficacy of a bill of particulars in a criminal proceeding. In *People v. Mahle* (1974), 57 Ill. 2d 279, 283, 312 N.E.2d 267, 270, the supreme court stated:

> "The information must set forth the nature and elements of the offense charged as prescribed in section 111—3(a) of the Code of Criminal Procedure. (Ill. Rev. Stat. 1969, ch. 38, par. 111—3(a).) Whether the information is sufficient, however, is to be determined by the substance of the charge and not the technicalities of its language."

The court went on to state that an information was sufficient if it specifically stated the elements of the offense with sufficient particularity to apprise the accused of the crime charged and enable him to prepare his defense. The court concluded:

> "Had the defendant had any doubt as to the identity of the victims of his deceptive practices, he could have removed the doubt by use of a bill of particulars. (Ill. Rev. Stat. 1969, ch. 38, par. 111—6.)" (57 Ill. 2d 279, 282, 312 N.E.2d 267, 270.)

In *People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440, the court stated:

> "When attacked for the first time on appeal a complaint is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct."

In the case before us no objection was made to the complaint in the trial court and this issue has been raised for the first time on appeal herein. Under the authority of the above cases we find this contention to be without merit.

We come then to the second contention of the defendant, that he was denied due process under the fourteenth amendment to the United States Constitution because he was tried before a nonlawyer judge. This issue was not raised in the trial court and it is to be noted that Judge Parrish, the presiding judge, was elected to the office of justice of the peace in 1961 and blanketed in as an associate judge by the transition schedule of the 1970 Constitution.[1] It is also to be noted at this point that the defendant was charged with theft of under $150 in value (Ill. Rev. Stat. 1969, ch. 38, par. 16—1(a)). This statute provided that for such offense the defendant could be sentenced to jail for a period not to exceed one year and/or a

---

[1] Under the Constitution of the State of Illinois, adopted September 30, 1970, effective July 1, 1971, the title of magistrate was changed to that of associate judge. (See Ill. Const. 1970, transition schedule § 4(a).) The new constitution further provides, notwithstanding the provisions of article VI of the 1970 constitution, magistrates in office on the effective date thereof are eligible to serve as associate judges.

fine not exceeding $500. The defendant was not sentenced to jail but was fined $90 and costs.

The defendant argues he was deprived of due process simply because he was tried by a lay judge for a crime for which the penalty of imprisonment was a possibility. The courts of Illinois have never considered this precise issue. The only case at all in point in Illinois is *City of Decatur v. Kushmer* (1969), 43 Ill. 2d 334, 253 N.E.2d 425, in which the supreme court held that a trial before a nonlawyer magistrate (now known as associate judges) for an offense punishable by a fine only did not violate due process. The courts in other jurisdictions have passed upon this issue and are somewhat evenly divided as to whether a nonlawyer judge may hear a case involving possible imprisonment. The leading case supporting the proposition that a nonlawyer judge may not hear such a case is *Gordon v. Justice Court* (1974), 12 Cal. 3d 323, 332, 525 P.2d 72, 78, 115 Cal. Rptr. 632, 638, in which the court stated:

> "Since our legal system regards denial of counsel as a denial of fundamental fairness, it logically follows that the failure to provide a judge qualified to comprehend and utilize counsel's legal arguments likewise must be considered a denial of due process."

The court there points out that several States have found that the use of nonattorney judges is consistent with the demands of due process, but the California court states:

> "Yet none of these cases convincingly resolved the inherent inconsistency in guaranteeing a defendant an attorney to represent him without providing an attorney judge to preside at the proceedings." (12 Cal. 3d 323, 333, 525 P.2d 72, 78, 115 Cal. Rptr. 632, 638.

The court then concluded that a defendant's right to a fair trial was substantially abridged by use of a nonlawyer judge. It is interesting to note that *Gordon* relies upon *Argersinger v. Hamlin* (1972), 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006. The court in *Argersinger* was dealing with the question of whether the constitutional right to counsel extended only to trial for nonpetty offenses punishable by more than six months imprisonment. That court held that:

> "* * * absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." (407 U.S. 25, 37, 32 L. Ed. 2d 530, 538, 92 S. Ct. 2006.)

The majority of the court did not conclude that the counsel must be provided for petty offenses punishable by fine only. However, Mr. Justice Powell in a separate concurring opinion therein observed that, given the proper case, the rule will doubtless be extended to all petty offenses except the most minor traffic violations. As *Argersinger* now stands,

counsel need not be appointed for offenses not punishable by possible imprisonment. The majority of the court limited their decision in that case by stating:

"The run of misdemeanors will not be affected by today's ruling. But in those that end up in the *actual deprivation of a person's liberty*, the accused will receive the benefit of the 'guiding hand of counsel' so necessary when one's liberty is in jeopardy." (Emphasis added.) 407 U.S. 25, 40, 32 L. Ed. 2d 530, 540, 92 S. Ct. 2006.

The contrary view concerning the need for a lawyer judge is best typified by the statement of the court of appeals of Kentucky in *Ditty v. Hampton* (Ky. 1973), 490 S.W.2d 772, 774-75:[2]

"Due process, as regards the *tribunal* hearing a case, usually has been considered to require only that the tribunal be *fair and impartial*. In re Murchison, 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942. The function of the court is not to defend the accused, or to represent him, but to decide fairly and impartially. An accused needs counsel to defend him, as pointed out in Gideon v. Wainwright, because the government employs lawyers to prosecute him—because our system of criminal justice is an adversary system. But the judge is not one of the accused's adversaries, and is not there either to defend or to prosecute him. So the fact that the accused needs a lawyer to defend him does not mean that he needs to be tried before a lawyer judge."

In further support of this argument the defendant has cited *North v. Russell* (1974), 419 U.S. 1085, 42 L. Ed. 2d 677, 95 S. Ct. 673, which has been decided by the Supreme Court of the United States. (422 U.S. 1040, 49 L. Ed. 2d 534, 96 S. Ct. 2709.) In that opinion the Supreme Court points out the various States that provide for nonlawyer judges, and observes that in some of those States there have been mandatory training programs while some of the states have voluntary training programs. In the State of Illinois it is obvious that such training programs have not been instituted except for the requirement that all associate judges attend annual conferences. It is obvious further that the reason such programs have not been instituted in this State is that, under our constitution and transition schedule, by attrition, nonlawyer judges will be phased out within a comparatively short period of time. The Supreme Court in *North v. Russell* did not specifically answer the question presented to this court but considered an appeal from the State of Kentucky where there is a two-tiered system whereby a defendant could be tried by a nonlawyer judge in a police court but was entitled to a trial *de novo* before a lawyer judge

---

[2] It is to be noted that Kentucky is a "two tiered" system. See discussion infra on *North v. Russell* (1976), 422 U.S. 1040, 49 L. Ed. 2d 534, 96 S. Ct. 2709.

in the Kentucky circuit court. The court held that the Kentucky procedure of utilizing a nonlawyer judge in the first instance was not constitutionally improper as the defendant was entitled to be tried in a court presided over by a lawyer judge and an appeal automatically vacated the conviction in the police court. It can thus be seen that *North v. Russell* does not specifically answer the question presented to this court. The Supreme Court observed in a footnote to *North v. Russell,* however, that more than 95% of all criminal cases in England are tried before lay judicial officers.

We note that the question of whether a defendant's right to a fair trial under the due process clause of the fourteenth amendment to the United States Constitution has been abridged when he is tried by a nonlawyer judge has arisen in a number of different State courts recently. (*Ex Parte Ross* (Tex. Crim. App. 1975), 522 S.W.2d 214; *Jenkins v. Canaan Municipal Court,* No. 7230 (N.H. 1976); *Treiman v. State,* No. 49-061 (Fla. 1977); *Young v. Konz* (Wash. 1977), 558 P.2d 791; *Treiman v. Malmquist,* No. 50,731 (Fla. 1977); *Palmer v. Superior Court* (Ariz. 1977), 560 P.2d 797; and *People v. Skrynski,* No. 424 (N.Y. Ct. of Appeals, pending). In Texas the question was raised before the United States Supreme Court, passed on *North v. Russell.* The reader is unable to determine whether or not Texas has a two-tier system similar to Kentucky's from the *Ross* opinion. The Court of Criminal Appeals of Texas, however, did adopt the position taken by the Kentucky court of appeals in *Ditty v. Hampton.* The court held that there was no reason for them to find that the defendant was denied due process where he was tried before a nonlawyer judge for a criminal offense punishable by imprisonment. In New Hampshire the State laws provided for a two-tier system which is comparable to the Kentucky two-tier system. In *Jenkins* the New Hampshire Supreme Court held that under the authority of *North v. Russell* the defendant's due process rights were not violated. In Washington the local laws provide for an automatic right of new trial in all cases where a nonlawyer judge finds the defendant guilty, irrespective of error in the first trial. While the system is not identical to Kentucky's system, the Washington Supreme Court held that it was not so different to require "a sufficient distinction to effect the impact of *North* on the instant case." In Florida the State law did not provide for a two-tier system. The Florida Supreme Court specifically noted that the *North v. Russell* decision was less than decisive in resolving the issue before them. The court discussed the conflicting authority among the states on this issue and concluded that the people of Florida, through ratification of the state constitution providing for nonlawyer judges, expressed their consent to a judicial system with limited utilization of nonlawyer county judges. However, the court went on to hold that since the nonlawyer judge in question had not completed

his training program at the University of Florida, for nonlawyer county judges, that it was improper for him to hear the case. In substance, the Supreme Court of Florida held that, with the proper training, a nonlawyer judge could sentence the defendant for a misdemeanor under the Florida constitution. In Arizona the State law was amended in 1974 to change their two-tier system, which was essentially the same as Kentucky's, to a new system where an appeal lies from a decision of a nonlawyer judge to the superior court, which is made up entirely of lawyer judges. If the superior court judge reviewing the record determines that the record is not sufficient, the court is free to grant a trial *de novo*. If, on the other hand, the record is sufficient for review, an appeal is considered on the record and the judge may reverse and remand for a new trial, reverse and direct an acquittal or affirm and remand the case for carrying out of the judgment. The Supreme Court of Arizona held that the system meets the requirements of fairness and of due process.

Having reviewed all of the above cases, the only conclusion that we may reach is that each State must decide whether the use of nonlawyer judges in a criminal proceeding under the existing laws of their State violates the defendant's rights to a fair trial and due process. In the case before us we observe first that the defendant had experienced counsel; secondly, no objection was made to the trial being held before a nonlawyer judge; and third, the defendant was fined and not committed to jail. We noted in passing that the associate judge in question had been on the bench for a number of years.

■■ Under the circumstances of this case we do not find that the defendant was deprived of due process under the fourteenth amendment to the Constitution of the United States or the laws of our State. In so doing we follow the opinion of those States which hold that a defendant may be tried by a nonlawyer judge not only where a fine is imposed but also where there is a possibility of imprisonment. In this we are at odds with the California courts and those States which have followed the California decision in this regard.

■■ The last issue presented by the defendant herein is that he was not proven guilty beyond a reasonable doubt. It has been repeatedly said that this court will not substitute its judgment for that of the trial court sitting without a jury. The trial court has the opportunity to observe the demeanor of the witnesses and thus is in a far better position to judge their credibility and consider the facts presented than we are able to do in reviewing the same. In this case the security officer saw the defendant take the garment in question from the rack, bend down, return the empty hanger and a few minutes later the garment was found in a shopping bag carried by the defendant. The testimony presented by the defendant that

he purchased it from a tall, big man outside the store in the mall was obviously not convincing in view of what transpired inside the store. We therefore affirm.

Affirm.

·RECHENMACHER, P. J., and SEIDENFELD, J., concur.