Terrence AMREIN, Petitioner,

v.

STATE of Wyoming, Respondent.

No. 91–30.

Supreme Court of Wyoming.

Aug. 18, 1992.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Laramie, for petitioner.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Jennifer L. Gimbel, and Larry M. Donovan, Sr. Asst. Attys. Gen., Prosecution Assistance Program: Theodore E. Lauer, Director, Sean P. Durrant, Student Intern, Cheyenne, for respondent.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

* Chief Justice at the time of oral argument.

GOLDEN, Justice.

In a jury trial presided over by a nonlawyer justice of the peace, petitioner Terrence Amrein was convicted of eight counts of cruelty to animals. Sentenced to serve eight consecutive jail terms of six months each and ordered to pay eight fines of $750 each, the petitioner appealed to the district court. That court affirmed. Petitioner then filed with this court his petition for a writ of certiorari seeking a review of issues concerning right to counsel, double jeopardy, and lack of jurisdiction. This court issued its order granting the petition for the purpose of considering three issues:

1. Was appellant denied his right to counsel because the presiding judge was a nonlawyer justice of the peace?

2. Was appellant's right against double jeopardy violated when he was convicted and sentenced on multiple counts of cruelty to animals which resulted from a single continuous criminal act or transaction?

3. Did the justice of the peace lack jurisdiction to impose eight (8) consecutive six (6) month jail terms and eight (8) consecutive $750.00 fines?

We consider these issues in the context of the following factual background. Following the sheriff's investigation of allegations that forty horses and forty-five cows in the petitioner's custody had been deprived of food, water, and shelter, the deputy county and prosecuting attorney of Sublette County filed an information against petitioner in the justice of the peace court charging him with forty-four counts of cruelty to animals in violation of Wyo.Stat. § 6–3–203(b) (June 1988).

After the prosecution amended the information several times, petitioner went to trial before a jury on nine counts. Common to all the counts in the amended information was the prosecutor's averment that on April 1, 1989, Amrein had unnecessarily failed to provide each animal with proper food. Of the nine counts, six referred to horses and three to cows. A nonlawyer justice of the peace presided over the trial. Petitioner was represented by appointed counsel. The jury found petitioner guilty

of eight of the nine counts. The justice of the peace sentenced petitioner to serve six months in jail and ordered him to pay a fine of $750 on each of the eight counts, the jail sentences to run consecutively. Consequently, petitioner faces four years in jail and a fine totaling $6,000. The jurisdiction of the justice of the peace court in criminal cases is defined:

> Justice of the peace courts have jurisdiction in all criminal cases amounting to misdemeanor [misdemeanors] for which the punishment prescribed by law does not exceed imprisonment for more than six (6) months and a fine of not more than seven hundred fifty dollars ($750.00). Jurisdiction shall also include those criminal cases in which the defendant is placed on probation for a period exceeding the maximum six (6) months imprisonment sentence under Wyo.Stat. 31–5–233(d).

Wyo.Stat. § 5–4–116 (Supp.1991).

We hold that petitioner was not denied his right to counsel because a nonlawyer justice of the peace presided over the petitioner's jury trial. We hold, however, that petitioner's right against double jeopardy was violated when he was convicted and sentenced on multiple counts of cruelty to animals that resulted from a single continuous criminal transaction. Accordingly, we reverse all but one of the convictions, sentences and fines, and affirm the petitioner's conviction, sentence, and fine on one count of cruelty to animals. In light of this disposition, we do not address the question whether the justice of the peace court lacked jurisdiction to impose eight consecutive jail terms and fines in this case.

## DISCUSSION

1. *Right to counsel.*

Petitioner states in his brief, "the principal thrust of petitioner's argument is that a jury trial before a lay justice of the peace is per se violative of due process, and more specifically the right to counsel * * *." Petitioner seems to be claiming that, considering the complications of a jury trial and evidentiary problems, the right to

counsel, as guaranteed under both the sixth amendment, U.S. Const. and Wyo. Const. art. 1, § 10, requires "a judge trained to understand legal arguments."

In *Canaday v. State*, 687 P.2d 897 (Wyo.1984), we held that an accused's due process rights were not violated by a trial presided over by a nonlawyer justice of the peace. *Canaday* differs from petitioner's specific claim here in that we did not decide that an accused's lawyer cannot function effectively before a nonlawyer judge. We agree with the state's assessment here that the reasoning that underlies *Canaday* supports the conclusion in the instant case that the performance of an accused's lawyer is not per se impaired when a nonlawyer judge presides over the accused's misdemeanor trial.

Although petitioner rhetorically asserts that his trial was "a disorderly, if not lawless, free-for-all with little regard for (or consistency in application of) the rules of evidence * * *," he eschews the assignment of specific trial errors for the purpose of establishing reversible error. Despite the petitioner's rhetoric, he fails to present evidence, legal authority, or cogent argument to support his claim that lay judges are so inherently unable to communicate with lawyers that an accused is denied effective assistance of counsel when a nonlawyer judge presides over an accused's trial. We note that the petitioner's concern about a nonlawyer justice of the peace's training is not well-founded in Wyoming. In this state a justice of the peace must attend a training school after election or appointment to office and must continue to attend such training while in office. We reject petitioner's assignment of error on this point.

### 2. *Double jeopardy.*

In *Vigil v. State*, 563 P.2d 1344, 1350 (Wyo.1977), this court recognized that although the double jeopardy clauses found in Wyo. Const. art. 1, § 11, and in the fifth amendment, U.S. Const. "are dissimilar in language, they have the same meaning and are coextensive in application." That being so, we shall apply our state's double jeopar-

dy clause to answer the second issue presented. This clause provides an accused three protections. It protects the accused who has been acquitted against a second prosecution for the same offense; it protects the accused who has been convicted against a second prosecution for the same offense; and it protects the accused against multiple punishments of the same offense. *Birr v. State*, 744 P.2d 1117, 1119, (Wyo.1987), *cert. denied*, 496 U.S. 940, 110 S.Ct. 3224, 110 L.Ed.2d 671 (1990). In this case we are concerned with the third protection, and the issue is whether petitioner was convicted and punished on multiple counts of cruelty to animals which resulted from a single criminal transaction.

Since consecutive sentences and multiple fines were imposed at a single trial, petitioner correctly points out that "the role of the [double jeopardy clause] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Birr*, 744 P.2d at 1119 (quoting *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977)). Thus, the problem is one of determining the legislative intent underlying § 6–3–203(b), proscribing cruelty to animals. We recognized in *Vigil* that statutory construction and legislative intent will control the determination whether, when there are multiple victims from a single act or course of conduct, there is only one crime or as many crimes as there are victims. *Vigil*, 563 P.2d at 1352–53. In *Vigil* we noted a difference in crimes against persons in contrast to crimes against property. We said, "As a general proposition, with few exceptions, in crimes against the person, when contrasted with crimes against property, there are as many offenses as individuals affected." *Id.* at 1352.

Applicable general principles of statutory construction include: if the language is clear and unambiguous, we must abide by the plain meaning of the statute; if a statute is ambiguous, we may resort to general principles of construction; an ambiguous statute is one whose meaning is uncertain and susceptible of more than one

meaning; and in a criminal statute, an ambiguity should be resolved in favor of lenity. *Story v. State*, 755 P.2d 228, 231 (Wyo. 1988). *See also, Capwell v. State*, 686 P.2d 1148 1152–53 (Wyo.1984).

With the above and foregoing propositions and principles in mind, we turn to the language of the criminal statute in question:

> A person commits cruelty to *animals* if he has the charge and custody of *any animal* and unnecessarily fails to provide *it* with the proper food, drink or protection from the weather, or cruelly abandons *the animal.*

Wyo.Stat. § 6–3–203(b) (emphasis added).

The state emphasizes the legislature's use of the singular noun and pronoun in the provision, i.e., "any animal," "it," and "the animal." Further, the state traces the humanitarian effort in the late stages of the last century which contributed to the enactment of cruelty to animal statutes. Claiming that this humanitarian impulse is concerned with the pain and suffering which each mistreated animal must endure, the state argues that the legislative intent was to protect individual animals, which individually feel pain and suffering.

On the other hand, petitioner maintains the statutory provision is susceptible to an interpretation that the "unit of prosecution" is determined by the accused's conduct of failing to provide it or them proper food, drink or protection from weather. In support of this view, petitioner points to the legislature's use of the plural "animals" in the opening clause and the modifier "any" when referring to "animal." Relying on the apparent ambiguity of the statutory provision, petitioner invokes the rule of lenity and asks us to decide in his favor on this point.

Apart from considering the competing contentions of the prosecution and the petitioner, we have also considered this court's double jeopardy discussion in *Jerskey v. State*, 546 P.2d 173, 183–87 (Wyo.1976). In the course of that opinion the court discussed the concept of merger of separate criminal offenses. *Id.* at 186. We noted that separate charges could be brought in the same complaint under the theory that both are of the same character or are based on the same transaction constituting part of a common scheme or plan. *Id.* at 186–87. In *Jerskey*, which involved possession with intent to deliver marijuana, we found only one transaction, not different transactions which would support multiple convictions. We held:

> There was but one transaction—one common scheme or plan—and, because one offense was merged with another, the convictions may not be stacked because the result would be to have twice placed the defendant in jeopardy in that he would have received multiple punishment for the same offense at one trial.

> It was therefore prejudicial error for the court to enter judgment and sentence for more than one of the alleged crimes.

*Id.* at 187.

In the instant case, the amended information charged Amrein with cruelty to nine animals on April 1, 1989, by failing unnecessarily to provide them with food. Considering the ambiguity of the statutory provision, as petitioner points out, and the prosecutor's identification of one transaction in the information, as well as the rule of lenity which comes into play when ambiguities exist, we are constrained in this close case to hold that Amrein's cruelty to animals on April 1, 1989, constituted but one offense. We further hold that the convictions may not be stacked because the result would be to have placed Amrein in jeopardy multiple times in that he would have received multiple punishments for the same offense.

We hold it was prejudicial error for the trial court to enter judgment and sentence for more than one conviction of cruelty to animals. We vacate all but one of Amrein's convictions and enter judgment and sentence on that one conviction of cruelty to animals with the punishment to be six months in jail and a fine of $750. As our resolution of this issue disposes of the case, we need not address the third issue presented in this court's order granting the petition.

URBIGKIT, J., filed an opinion, concurring in part and dissenting in part.

THOMAS, J., filed a dissenting opinion.

URBIGKIT, Justice, concurring in part and dissenting in part.

I agree that seven of the eight convictions in this case should be reversed. My disagreement with the majority is that I think we should further find that the eighth conviction should also be reversed to provide a fair and proper retrial to Terrence Amrein.

In general wisdom, it is appropriately critiqued that the proof of the pudding is in the eating. The character and conduct of the trial can similarly be discerned from reading the evidentiary transcript. The characterization by Amrein's appellate counsel of this proceeding of nine multiple charges presenting an exposure to Amrein of a possible maximum four and one-half years in the county jail, nine consecutive sentences of six months each, thoughtfully describes what the record reveals. Originally beginning with forty-four separate counts in the justice of the peace court for inadequately feeding his livestock and following several amended informations resulting in nine counts, Amrein was convicted of eight crimes for which the lay justice of the peace provided misdemeanor crime sentences totalling four years in the county jail. The total, by consecutive sentencing, was the absolute maximum that could be conglomerated.

This "pudding," to be found by mixing metaphors in this case, is described by Amrein in appellate brief:

At the outset, we may never know the extent of prejudice in this case, limited as we are to the available record. The transcript recites that jury selection was "not transcribed at request of counsel." * * * Nor were opening statements. * * * Closing arguments are also absent

from this record. * * * Admittedly Rule 4.01, W.R.A.P. was not in effect at the time of trial, but this court has held in *Bearpaw v. State*, 803 P.2d 70 (Wyo. 1990) that the unavailability of an adequate record for review requires reversal. (The present case was tried after the Bearpaw trial, but before the Supreme Court decision.)

The available transcript indicates a disorderly, if not lawless, free-for-all with little regard for (or consistency in application of) the rules of evidence, particularly those dealing with hearsay and relevance.

I would also assert, considering all of the circumstances, that Amrein's appellate brief accurately recognizes a record that justifies the position of Amrein "that he was denied due process by a trial before a non lawyer justice [of the peace]." For a case that touches the non-indigency, denied appointment of counsel, which developed here in a very unsatisfactory form, and multiplied misdemeanors at the same time, see *State ex rel. Barth v. Burke*, 24 Wis.2d 82, 128 N.W.2d 422 (1964).

I concur with the majority that the multiple offenses in this case all related to a single offense for which double jeopardy would require limitation to one jurisdictionally limited sentence for the justice of the peace court.[1] Wyo. Const. art. 1, § 11.

In addition to reversal of the multiple counts for one offense, I would reverse the conviction and remand for a proper trial to provide Amrein some reasonable exposure to equal protection and due process. The *Bearpaw* issue (adequacy of appellate record, *Bearpaw v. State*, 803 P.2d 70 (Wyo.1990)) is not actually presented, but this court is not properly provided with a sufficient record for complete appellate review since voir dire, which was critically important, like opening and final argument, is omitted.

---

1. I will not accept *Birr v. State*, 744 P.2d 1117 (Wyo.1987), *cert. denied* 496 U.S. 940, 110 S.Ct. 3224, 110 L.Ed.2d 671 (1990) as the justified authority. *See, however, Garcia v. State*, 774 P.2d 623 (Wyo.1989) and *Schultz v. State*, 751 P.2d 367, 371 (Wyo.1988), Urbigkit, J., specially concurring, both of which properly recognized double jeopardy principles within Wyo. Const. art. 1, § 11 and the Fifth Amendment to the United States Constitution. Furthermore, *Birr* is not, but *Garcia* and *Schultz* are, consistent with *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

The statutory jurisdiction of the justice of the peace court permits a maximum sentence of six months incarceration. Wyo.Stat. § 5–4–116 (1992). Here, however, the presiding jurist undertook to try this case in a proceeding where the entire charged criminal conduct multiplied to permit incarceration for a potential four-and-one-half years and resulted in a sentence of four years in county jail. That monumental leap over jurisdictional limitation has surely never been attempted by any other justice of the peace in the history of territorial and state government in Wyoming.

To provide a perspective regarding the continued use of justice of the peace courts in lesser populated Wyoming counties, some historical reference is informative. Initially, that court system was constitutionally based. There was a reason for the constitutional amendment, Original Senate Joint Resolution No. 1, 1965 Wyo.Sess. Laws at 518. The sponsor was Senate Judiciary Chairman Dick Tobin, a legislative statesman and exceptional Wyoming citizen in local affairs and American Bar Association leadership. A statement, included in submission of the constitutional amendment to the electorate, recognized the need to eliminate the constitutional status of the justice of the peace courts and to move forward to modernization of the Wyoming judicial system:

The following statement shall be endorsed on the foregoing proposed amendment by the Secretary of State of the State of Wyoming:

Our state constitution establishes and prescribes the jurisdiction of justice of the peace courts; also, it gives the legislature authority to establish municipal and arbitration courts. This proposed amendment, if adopted, would eliminate all such courts from the constitution and, instead, would give the legislature the authority to establish the subordinate courts it deems best suited to our modern needs and provide for their jurisdiction and manner of functioning. In the meantime, the present system would continue in effect under existing statutes until changed by the legislature.

*Id.* at 519.

The joint resolution passed in the 1965 Wyoming legislative session without a dissenting vote in the State Senate and fifty-five to six in the House of Representatives with strong support from membership of the Wyoming State Bar including, specifically, this writer. The amendment passed handily in the 1966 general election.

History does have some relevance in analysis of constitutional principles. *See Schad v. Arizona,* —— U.S. ——, 111 S.Ct. 2491, 2505, 115 L.Ed.2d 555 (1991), Scalia, J., concurring in part and concurring in the judgment. The 1965 legislature and the electorate in the 1966 election, directed attention to a desire to provide for the development of an improved state judiciary. Elimination of the justice of the peace/lay judge system then constitutionally emplaced was indispensable to accomplish that result.

Passage of the constitutional amendment followed not only by a gradual development of the county court system to now serve two-thirds of the population of the state of Wyoming, but initially to require that the remaining justice of the peace officeholders would be lawyers, if available. Unfortunately, as the county court system progressed, the trained lawyer/judge requirement was subjected to an unremitting attack by rural area legislators and finally came to be removed from Wyoming law by 1979 Wyo.Sess.Laws ch. 42, which became law without the Governor's signature on February 16, 1979.

This course of events came to establish unequal justice to be the Wyoming level of legislative aspiration. I cannot accept that result, either constitutionally or logically. Unfortunately, this court participated in and cooperated with the acceptance of inequality as a justice system standard by the politically appropriate and constitutionally infirm resolution found in *Canaday v. State,* 687 P.2d 897 (Wyo.1984). I will not endorse a lesser but acceptable precept and precedent instead of our aspirations to have competent, qualified, and legally-

trained judiciary. *Gordon v. Justice Court for Yuba Judicial Dist. of Sutter County*, 12 Cal.3d 323, 115 Cal.Rptr. 632, 525 P.2d 72 (1974). *See* Thomas R. Trenkner, Annotation, *Constitutional Restrictions on Nonattorney Acting as Judge in Criminal Proceeding*, 71 A.L.R.3d 562 (1976). *See also North v. Russell*, 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976), where a retrial de novo was available on appeal.[2]

The simple fact of the matter is that experienced practice and basic developed skills provide opportunity for better performance. That is true regarding the professional football player, the heart surgeon, and the military commander. In current time, expertise, training, and skill in execution provided the overwhelming difference in the Persian Gulf War between this nation and the vanquished Iraqi military forces.

So it is likewise with the profession of judging. Due process in general, hearsay and relevancy in specificity, with requirements for technical knowledge and experienced application, determine that neither the plumber nor the heart surgeon are competent, generally, to make judicial decisions; even like the plumber, with an equality of skill of the fingers, would not be a thoughtful person's choice to operate on a heart when life or death is at stake. Lay judges are equally not competent in the same way that law-trained judges would likely not equivalently perform with expertise the professions or occupations from which the lay judge's economic career was developed.

Simply stated as an operational fact, where knowledge and expertise is a criteria of performance, lay judges do not provide equal justice and the part-time justice of the peace system cannot, in general, provide a system of expertise equal to that provided in counties where the full-time, law-trained county judges are provided. It seems to me that "adequate even if unequal" as a justification is remarkably similar to "separate but equal", and, in a small way, has an equivalent capacity to provide similar societal harm. *See Plessy v. Ferguson*, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896) and *Brown v. Board of Edu-*

**2.** Clearly, as now demonstrated by the abrasive and abusive facts of this present case and resulting four-year county jail sentence, Justice Rose was correct in his analysis and constitutional rights perception in dissent in *Canaday*, 687 P.2d at 901.

Furthermore, I do not accept trial de novo guilty plea and acquittal cases to be present persuasive authority for due process and equal protection construction of either Wyoming or federal law. *See North*, 427 U.S. 328, 96 S.Ct. 2709 (de novo trial); *Treiman v. State ex rel. Miner*, 343 So.2d 819 (Fla.1977) (untrained judge denied right to conduct trial); *People v. Sabri*, 47 Ill.App.3d 962, 6 Ill.Dec. 104, 362 N.E.2d 739 (1977) (intermediate appellate court, no objection to the judge and no jail sentence entered); *Tsiosdia v. Rainaldi*, 89 N.M. 70, 547 P.2d 553 (1976) (trial de novo on appeal before a legally trained judge); *State v. Duncan*, 269 S.C. 510, 238 S.E.2d 205 (1977) (guilty plea); *Ex parte Ross*, 522 S.W.2d 214 (Tex.Cr.App.), *cert. denied* 423 U.S. 1018, 96 S.Ct. 454, 46 L.Ed.2d 390 (1975) (guilty plea); and *Shelmidine v. Jones*, 550 P.2d 207 (Utah 1976) (justice of the peace was constitutional, but the statute enforced granting litigant the right to require a legally trained judge). *See also Ditty v. Hampton*, 490 S.W.2d 772 (Ky.1972), *dismissed on other grounds* 414 U.S. 885, 94 S.Ct. 219, 38 L.Ed.2d 133 (1973) (de novo appeal to a legally trained judge); *State v. Haar*, 100 N.M. 609, 673 P.2d 1342 (1983); *People v. Skrynski*, 42 N.Y.2d 218, 397 N.Y.S.2d 707, 366 N.E.2d 797 (1977) (alternative right to trial before a law-trained trial judge); and *Young v. Konz*, 91 Wash.2d 532, 588 P.2d 1360 (1979) (guilty plea, otherwise de novo trial before law-trained judge).

I have another concern which is created by the majority's reliance on the obligation of the non-lawyer justice of the peace to obtain additional training as a responsibility of his position. Rules for Justice of the Peace Courts—Administrative Rules, Rule 2(f) states in part: "Must agree to attend, and attend the first available training school after election or appointment and each training school held annually thereafter while in office, or be subject to disciplinary action to be imposed by the Wyoming Supreme Court." We are not led by the State's appellate brief to any record evidence in this case that the office holder who conducted this trial did, originally upon appointment or regularly thereafter, attend any legal training programs sponsored by either the Wyoming Supreme Court or otherwise. Since we rely on the competency of the presiding judge, who performed this significant judicial responsibility without training in the law, some measure of documentary indication of compliance with the training requirement should be provided before comfort can be taken regarding compliance with the requirement as an indication of competence to provide a properly conducted trial.

*cation of Topeka, Shawnee County, Kan.,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). I cannot accept the separate but unequal (equivalent but unfair) concept of *Canaday,* 687 P.2d 897, nor the equivalency suggested in this case that Amrein, charged with an extremely serious offense in a rural area, was provided equal opportunity to justice. The record provided in the transcript of these proceedings categorically speaks to the validity of this conclusion. There certainly is expertise in ranching or accounting and without which many, if not most, lawyers will themselves be ill-prepared to profitably practice as their lifetime profession. Legal training, like ranching expertise, has its validity in competent management.

Each person in Wyoming, when taken to the bar of justice to face a criminal charge that could result in jail incarceration, should be entitled to expect not only a fair judge, but also a judge trained and proficient in the adjudicative profession which requires legal training.

If this court is intent on retaining the differentiated justice standard of *Canaday,* I would go even further for the purposes of the particular facts in this case and determine if we are directed to retain part-time, untrained adjudicators in some counties, then we surely must carefully confine the system to what the legislative intendment does provide. I would limit single trial jurisdiction to what is provided by the legislature so that the justice of the peace cannot try a combination of claims in one prosecution from which the justice of the peace would have the capacity to provide a sentence in excess of what is statutorily provided of six months incarceration. I would reverse this case on all counts, because the justice of the peace was trying a case involving potential confinement in excess of a year. In other words, this case was tried in a justice of the peace court like a felony prosecution for which the sentence imposed was equal or greater to sentences for other significantly serious felony offenses. This is no different from augmenting the separate incidents to achieve a felony offense. *In re Watkins,* 64 Cal.2d 866, 51 Cal.Rptr. 917, 415 P.2d 805 (1966).

It is recognized that the result of the majority decision is to reduce this case to a proper misdemeanor status, but it does not do so on a jurisdictional basis. It avoids that issue, with which I am in disagreement. In my perception, the resolution on double jeopardy leaves unresolved the basic jurisdictional question that was clearly presented. I would hold that the justice of the peace loses jurisdiction of any criminal case when the combined charges included in one prosecution relating to one general course of events can be extended in conviction so that the sentence given would exceed six months of incarceration. If the prosecution wants to pursue separate charges raising the possibility of consecutive sentences such as occurred here, then the jurisdiction can be provided for the proceedings only by utilization of the constitutionally mandated court—the district court. *Houtz v. Board of Com'rs of County of Uinta,* 11 Wyo. 152, 70 P. 840 (1902); *State v. Bouche,* 485 So.2d 950 (La.App. 1986).

It is axiomatic that a trial of an accused person in a court which has no jurisdiction over the matter cannot result in a valid determination of his guilt or innocence of the offense for which he is charged. *Denver County Court v. Lee,* 165 Colo. 455, 439 P.2d 737 (1968); *Grodis v. Burns,* 37 Conn.Supp. 844, 440 A.2d 315 (1981); *State v. Bullis,* 93 Idaho 749, 472 P.2d 315 (1970); *Baldwin v. Anderson,* 51 Idaho 614, 8 P.2d 461 (1932); *State v. Yoes,* 271 N.C. 616, 157 S.E.2d 386 (1967); *Bourne v. Graham,* 260 S.C. 554, 197 S.E.2d 674 (1973).

Furthermore, I find violation in this proceeding of Wyo. Const. art. 1, § 9 in using a six-member jury, since the potential penalty of four years of confinement is surely not the misdemeanor result for which the constitutional guarantee of a twelve-member jury is provided by the Wyoming Constitution. It is discerned that if we should set sail again on the Sargasso Sea that the constitutional standard of twelve jurors provided for felony convictions should be provided as crew members. *See Bouche,* 485 So.2d 950. *See also State v. Williams,* 404 So.2d 954 (La.1981) (the aggregate pun-

ishment which may be imposed determines whether the right to a jury trial exists if two or more charges are found in a guilty assessment at trial). The *Williams* court found that if the aggregate totaled more than six months, there was a right to a jury. Here, since the aggregate totaled more than a year, the right to a twelve-member jury should, likewise, be protected. See similarly, regarding aggregated offenses in refusal of a right to a jury trial, *United States v. Potvin,* 481 F.2d 380 (10th Cir.1973) and *State v. Owens,* 54 N.J. 153, 254 A.2d 97 (1969), *cert. denied* 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970). The sequential contempt charges in *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974), in regard to jury entitlement with consecutive sentences, should be emphatically decisive in application of the United States Constitution on the issue.

I remain persuaded that when an individual is faced with a criminal charge where the confinement punishment could be extended from a period of six months to a total of four-and-one-half years, not only is the individual entitled to a "proper" jury—twelve members in Wyoming, *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Wyo. Const. art. 1 § 9; competent counsel, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); a speedy and public trial, *Klopfer v. State of North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); confrontation, *Pointer v. State of Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); and compulsory process, *Washington v. State of Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); Wyo. Const. art. 1, §§ 6, 7, 8, 9 and 10; *but, in addition,* the individual is also entitled to a competent and properly trained judge to conduct the jury trial. *Cf. North,* 427 U.S. 328, 96 S.Ct. 2709. As United States Supreme Court Justice White stated, certainly "no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized." *Baldwin v. New York,* 399 U.S. 66, 69, 90 S.Ct. 1886, 1888,

26 L.Ed.2d 437 (1970). See likewise, in a status of similar augmentation of separate counts, *United States v. Seale,* 461 F.2d 345 (7th Cir.1972).

Finally, this court should not accept the editorializing relative to the operation of the legislature by utilizing book publishers' insertions in statutory compilations as proper replacement for legislative action. The Wyoming State Legislature, in the enactment of the justice of the peace jurisdiction statute, 1985 Wyo.Sess.Laws ch. 147, § 1, and repeated verbatim in 1989 Wyo. Sess.Laws ch. 39, § 1, provided for the singular misdemeanor, not the plural misdemeanors inserted by the statutory publisher. Application of plain meaning, *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization,* 813 P.2d 214 (Wyo.1991), *see, however,* Anthony D'Amato, *Counterintuitive Consequences of "Plain Meaning,"* 33 Ariz.L.Rev. 529 (1991), teaches that the Wyoming State Legislature was careful following re-authentication of the lay justice of the peace to confine criminal trial authority to one charge in one prosecution.

At issue is the jurisdictional question of whether the legislature has provided jurisdiction to courts to stack claims in criminal complaints providing a mathematical expansion of ultimate authority. If this is true, the stated limitation in the statute is meaningless where limited by the vagaries of double jeopardy. Consider, for example, *Birr v. State,* 744 P.2d 1117 (Wyo.1987), *cert. denied* 496 U.S. 940, 110 S.Ct. 3224, 110 L.Ed.2d 671 (1990) versus *Schultz v. State,* 751 P.2d 367 (Wyo.1988). If the legislature, by enactment, used the singular misdemeanor and applied the limitation of six months incarceration, we completely rewrite plain meaning. *Allied–Signal, Inc.,* 813 P.2d 214. We change that limitation into a plural concept and delete the maximum penal limitation that has existed in Wyoming law, at least since 1876, *see* Compiled Statutes, ch. 71, § 1, at 430 (1876). Furthermore, the monumental difference, first provided by early Wyoming law and continued for many years until recent time, came from the opportunity for

a new trial in the district court. *Id.* at § 39.

When the justice of the peace in Sublette County, Wyoming undertook the trial where he obviously expected that the penalty exposure would be more than six months in one proceeding, I would apply the specific words of the statute and deny jurisdiction to proceed. In considering the stacking question regarding criminal offenses and jurisdictional limitations, there is a comparable principle to be found which is decisively resolved in civil cases that the total amount claimed in multi-claim pleading determines the maximum amount for that court's jurisdiction. *Miami Copper Co. v. State*, 17 Ariz. 179, 149 P. 758 (1915); *Hammell v. Superior Court In and For Los Angeles County*, 217 Cal. 5, 17 P.2d 101 (1932); *Phillips v. Snowden Placer Co.*, 40 Nev. 66, 160 P. 786 (1916); *Salitan v. Dashney*, 219 Or. 553, 347 P.2d 974 (1959). Aggregate amounts and separate counts unite to exceed statutory amount and the justice of the peace is without jurisdiction. *Filtsch v. Strong*, 158 Okl. 303, 13 P.2d 163 (1932). To the same effect, but with a different result, see *Bourgoyne v. York*, 28 Conn.Supp. 424, 265 A.2d 344 (1968) (citing *United States v. Pridgeon*, 153 U.S. 48, 62, 14 S.Ct. 746, 751, 38 L.Ed. 631 (1894)), where the jurisdictional limit for multi-counts was enforced, but only to result in a reduced sentence.

Many years ago, this court addressed the results where a justice of the peace court undertook to try a case when the scope of possible punishment exceeded jurisdiction. *Houtz*, 11 Wyo. 152, 70 P. 840. Our predecessors, as jurists on this court, then said the statutory sentencing potential for the misdemeanor offense was in excess of justice of the peace jurisdiction:

It is certain that the justice was acting in excess of his jurisdiction in pronouncing sentence upon the parties before him. His only authority in the premises was to sit as an examining magistrate, and upon ordering the accused to be held to answer in the District Court upon the charge preferred against him, to take a satisfactory recognizance for his appearance before such court, or in default

thereof to commit him to the jail of the county until discharged by due course of law. The jurisdiction of justices of the peace to try and determine public offenses, and impose punishment, is limited by statute to cases in which the punishment prescribed by law does not exceed a fine of one hundred dollars and imprisonment for six months in the county jail.

*Houtz*, 11 Wyo. at 169–70, 70 P. at 842.

*Houtz* has a similarity to the present case since it also involved a livestock offense when, instead of incarceration, the presiding justice of the peace entered a fine within the statute but beyond the jurisdiction provided by statute for his court. I concur in reducing the sentence imposed on Amrein for contended improper feeding of his animals to a single crime on the basis of double jeopardy. Additionally, however, we should reverse the conviction of the remaining offense and remand for trial as a misdemeanor in a proceeding where due process and equal protection will be provided. We should confine the justice of the peace court jurisdiction to a total misdemeanor punishment limitation.

THOMAS, Justice, dissenting.

I dissent from the disposition of this case according to the majority opinion. I am not necessarily dissatisfied with the result but, in my view, this case is one that would best be disposed of by applying the doctrine of merger of offenses for sentencing. This court has acknowledged that the prohibition against double jeopardy found in both the Fifth Amendment to the Constitution of the United States and in Article 1, Section 11 of the Constitution of the State of Wyoming affords three distinct protections to the accused. Among those, is the protection against multiple punishments for the same offense in a single trial. *E.g.*, *Lauthern v. State*, 769 P.2d 350 (Wyo. 1989); *Schultz v. State*, 751 P.2d 367 (Wyo. 1988); *Birr v. State*, 744 P.2d 1117 (Wyo. 1987), *cert. denied* 496 U.S. 940, 110 S.Ct. 3224, 110 L.Ed.2d 671 (1990); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

In *Vigil v. State*, 563 P.2d 1344 (Wyo. 1977), we discussed the filing of multiple charges and the separate verdicts on those charges that were returned by the jury. The court introduced the subject in this way:

> There are here separate crimes that have been charged and proven. All arise from the same event but each involves a separate victim and courts are protective of the individual citizen subjected to the criminal conduct of another. We have compiled cases in which there were separate charges, entangling more than one citizen victim, arising out of one occurrence in which courts have held there to be no double jeopardy and imposed multiple punishments, in some cases concurrent and in others consecutive or by combinations of those sentencing techniques. The precise question is addressed to the asserted error of failure of the trial court to dismiss all or part of the counts on the grounds of double jeopardy and fair trial.

*Vigil*, 563 P.2d at 1351.

Dismissal of all or part of the counts is precisely the disposition made by the majority opinion in this case and favored by the other dissenting justice. Yet, in *Vigil*, this court went on to hold that no prejudice attached to charging, trying, submitting to the jury, and receiving the five verdicts. The third protection afforded by the constitutional prohibition was not reached because the trial court in *Vigil* had imposed only one sentence.

I am satisfied, in this instance, that no error occurred in the trial court because of the failure to dismiss all or part of the counts on the grounds of double jeopardy and fair trial. Certainly, the evidence was adequate to justify a conviction on any one of the counts as is appropriately demonstrated by the arbitrary selection of one unidentified count to be sustained and the vacation of all of the other convictions. (I have some concern about the ultimate result under the majority opinion if the selected count should somehow be reversed on post-conviction review.) I would maintain the validity of each conviction, but would permit the justice of the peace court to impose only one sentence by holding that these offenses merged for purposes of punishment.

A very lucid description of the doctrine of merger of offenses for sentencing is found in *Commonwealth v. Whetstine*, 344 Pa.Super. 246, 496 A.2d 777 (1985), as that doctrine has developed in Pennsylvania.

> In deciding whether offenses merge, the question is whether the offenses charged "necessarily involve" one another, or whether any additional facts are needed to prove additional offenses once the primary offense has been proven. In deciding merger questions, we focus not only on the similarity of the elements of the crimes, but also, and primarily, on the facts proved at trial, for the question is whether those facts show that in practical effect the defendant committed but a single criminal act.
>
> Additionally, we note that analysis of merger claims traditionally has revolved around the concept of injury to the sovereign; in order to support the imposition of more than one sentence, it must be found that the defendant's conduct constituted more than one injury to the Commonwealth.

*Whetstine*, 496 A.2d at 779–80 (citations omitted).

Applying that approach, I would analyze this case as one in which we are concerned about the concept of injury to the sovereign. The majority opinion quotes from the statute in question, Wyo.Stat. § 6–3–203(b) (1988), and I note that it defines the offense as cruelty to animals, in the plural. It follows that the injury to the sovereign is cruelty to animals. The evidence for the several counts is substantially identical except that it did establish that more than one animal was involved. The doctrine of merger, applied in light of common sense in this instance, and analyzing the "unique facts" of this case, achieves the appropriate result.

As the majority notes, the jurisdiction of the justice of the peace court in a criminal case is limited to punishment for not more than six months and a fine of not more than $750. The application of the doctrine

of merger for sentencing recognizes this limitation upon the jurisdiction of the justice of the peace court, and the single sentence for the merged offenses does not exceed that jurisdiction.

In *In re Snow*, 120 U.S. 274, 284, 7 S.Ct. 556, 30 L.Ed. 658 (1887), the court quoted Lord Mansfield writing in *Crepps v. Durden*, Cowper 640:

> There can be but one entire offence on one and the same day. And this is a much stronger case than that which has been alluded to, of killing more hares than one on the same day. Killing a single hare is an offence; but the killing ten more on the same day will not multiply the offence, or the penalty imposed by the statute for killing one.

It seems to me Lord Mansfield's comment is peculiarly applicable to this instance and, while it might lead to a conclusion that it supports the majority resolution, I conclude the holding in *Vigil*, which is cited by the majority, demands the convictions be sustained, but that the single penalty be imposed.

Recognizing that the "bottom line" according to the majority opinion and according to my suggestion is identical, I am satisfied that we better support our precedent articulated in *Vigil*, and perhaps maintain a better posture of the law in Wyoming, by acknowledging the validity of the separate charges and the separate convictions. At the same time, we protect the constitutional rights of Amrein by limiting the imposition of punishment to a single sentence that is clearly within the jurisdiction of the justice of the peace court in a single case.